**Cheryl T. RECUPERO, Plaintiff—Appellant,**

v.

**NEW ENGLAND TELEPHONE AND TELEGRAPH COMPANY, et al., Defendants—Appellees.**

**No. 96–2265.**

United States Court of Appeals, First Circuit.

Heard May 6, 1997.

Decided July 7, 1997.

Lynn Thomas Johnson, with whom Blaine J. DeFreitas, Lowell, MA, and Saab Law Firm were on brief, for appellant.

Lisa M. Birkdale, New England Telephone and Telegraph Company, Boston, MA, for appellees.

Before BOWNES and CYR, Senior Circuit Judges, and KEETON,* District Judge.

KEETON, District Judge.

This appeal presents issues regarding the scope of jurisdiction of federal courts over claims for benefits under an employee benefits plan that is subject to regulation under the Employee Retirement Income Security Act (ERISA). In particular, we must decide what standards apply to judicial review of the decisions of the out-of-court decisionmakers in this case.

Without doubt, in the circumstances of this case, as the parties agree, the district court had jurisdiction for judicial review of the out-of-court decisions, under 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c), for at least one purpose: *to determine whether those decisions should be set aside as arbitrary and capricious.* In turn, this court has jurisdiction, under 28 U.S.C. §§ 636(c)(3) and 1291, to consider plaintiff-appellant's appeal from the district court's judgment for defendants.

In cases involving this kind of judicial review, ordinarily the appropriate judgment for a district court to order is one or the other of two kinds. If the district court determines that the out-of-court decisions were arbitrary and capricious, the appropriate form of order is one remanding to the out-of-court decisionmaker for further proceedings to decide whether the claim or claims have merit. Otherwise, the usual form of order is a final judgment affirming the decisions of the out-of-court decisionmaker. In this case, however, appellees assert

* Of the District of Massachusetts, sitting by designation.

that "[t]he only salient issue before the court is whether the determination of the Committee to deny Recupero accident benefits was arbitrary and capricious." (Appellee's Br. at 2.) Though acknowledging as a general matter the possibility of a remand "to the Committee for further consideration" (*id.*), in the end appellees request only a recognition that "the Committee's reasonable decision must be permitted to stand" and an order that the district court's summary judgment for defendant "be affirmed." (*Id.* at 22.) Appellant, also, seeks a final decision in this court. Thus, no party to the appeal asks for remand to the out-of-court decisionmaker (or even to the district court on conclusion of this appeal), except possibly as an alternative request, not clearly argued in the briefs and barely mentioned in oral argument apart from responses to questions from the court. Instead, the parties join in contending that, if we conclude that the out-of-court decisions were for some reason arbitrary and capricious, then we should (1) decide this controversy finally, or order the district court to do so, making any factual findings necessary to a decision on the merits, or (2) decide that the claim is finally resolved on grounds of some procedural bar, estoppel, or harmless error.

In these circumstances, this appeal presents a fundamental question about the scope of jurisdiction of the district court and this court. After stating relevant background matter in Part I, we address this fundamental jurisdictional question in Part II, concluding that the courts do *not* have plenary jurisdiction to decide all questions bearing on the merits. In Part III we turn to other issues, over which we do have jurisdiction, and conclude that the judgment of the district court against plaintiff-appellant is to be affirmed, though without approval of all details of the district court's reasoning.

## I. Background

The incident that forms the basis for this civil action and this appeal occurred on January 18, 1990, while the plaintiff-appellant, Cheryl Recupero, was working for New England Telephone and Telegraph Company ("NET") as a Service Representative. The District Court recited, as an undisputed fact, that:

> At 9:30 am on January 18, she left her workstation on the sixth floor for the purpose of going for coffee at a shop on the ground floor. She entered an elevator and was injured in a mishap while in the elevator.

(*Recupero v. New England Telephone & Telegraph Co.*, Civil Action No. 94–12266–MLW, Memorandum and Order, Sept. 20, 1996 at 2.)

As a result of injuries sustained in this incident, Recupero applied for benefits under the NET plan. (*Id.*) She was granted benefits under the Sickness provision of the plan, but was denied Accident benefits. (*Id.* at 3–4.)

The NET plan provides that an employee is:

> [Q]ualified to receive [Accident Disability] payments on account of physical disability to work by reason of accidental injury ... *arising out of and in the course of employment* by the Company.

(*Id.* at 3)(emphasis added).

The plan further elaborates that:

> Accidental injuries shall be considered as arising out of and in the course of employment *only where* the injury has resulted *solely* from accident *during and in direct connection* with the performance of duties to which the employee is assigned ...

(*Id.*)(emphasis added). The only limitation on the duration of payment of Accident Disability Benefits, under the terms of the plan, is that the employee remains unable to work. (*Id.* at 4 n. 2.)

The plan does not explicitly define what "sickness" is in the section providing for Sickness Disability Benefits, but does state that "sickness shall include injury *other than* accidental injury arising out of and in the course of employment by the Company." (*Id.* at 4)(emphasis added). Sickness Disability Benefits are subject to a duration limit of 52 weeks, under the terms of the plan. (*Id.* at 4, n. 2.) NET paid and Recupero accepted 52 weeks of Sickness Disability Benefits. (*Id.* at 3.)

The Benefits Office determined that Recupero was not entitled to Accident Disability Benefits because her injuries did not arise out of or occur in the course of her employment. (*Id.*) Recupero appealed this decision to the Employee Benefits Committee ("EBC" or "Committee"), which denied her appeal by letter on December 15, 1993, stating that "it was determined that there is evidence that you were not eligible for Accident Benefits for the incident report on January 18, 1990." (*Id.*) Recupero then filed an identical appeal with the Employee Benefits Claim Review Committee ("EBRC" or "Review Committee"), which also denied her appeal, stating that "after consideration of all available information, including the information you provided, the [EBRC] has determined that there is no reason to reverse the original decision of the [EBC]." (*Id.* at 5.)

Recupero filed a civil action for judicial review in the United States District Court for the District of Massachusetts. The district court assigned the case to Magistrate Judge Collings, under 28 U.S.C. § 636(c)(1) and Local Rules of the district.

In the district court, Recupero contended that: (1) the EBC and the EBRC acted arbitrarily and capriciously by erroneously interpreting the provisions of the plan; (2) the Committees' denial of her claim lacked good faith; and (3) the Committees gave her inadequate notice of the denial. (*Id.* at 9.)

The district court decided the case by ruling on cross motions for summary judgment.

The court initially noted the appropriate standard of review, stating that the arbitrary and capricious standard applies where the benefit plan vests the fiduciary with the discretionary authority to determine benefits eligibility and to construe plan provisions. (*Id.*) The court then made the following determination:

> [T]he NET plan enumerates in sufficient detail the broad discretionary powers of both the EBC and the EBCRC necessary for application of the deferential standard of review. Thus, the rulings of the NET committees will not be disturbed unless the denials were arbitrary and capricious.

(*Id.* at 8.)

The district court next examined in detail the various claims and contentions. Recupero, using the word "Committee" to refer to either or both of the Benefits Committee and the Review Committee, stated as her first argument that the Committee improperly categorized her injury as "off-duty" when it should have been treated as an "on-duty" injury. (*Id.* at 9.) This argument concluded with the assertion that it was not "rational" to classify incidents that occur during breaks, taken at a time required or directed by the employer, as being "off-duty" incidents. (*Id.*)

The district court concluded (contrary to Recupero's contention) that the EBC and EBRC had not been arbitrary and capricious in interpreting the plan as defining break-time as "off-duty" time. The court stated:

> Recupero does not point to any language in the plan which indicates that the committee interpretation is not rational. Nor does she point to language which suggests that the scope of the Accident Benefits Provision should be given a broader reading and be applied when the injury occurs as a result of an otherwise non-job-related activity which is marginally motivated by a job-related exigency. On the contrary, and the defendants point out, the plain language of the plan militates for a far narrower reading.

(*Id.* at 10–11.)

The court below also emphasized that the definition of an injury that would qualify an employee for accident benefits had words of limitation, such as "only," "solely," and "in direct connection." (*Id.* at 11.) These words, the court reasoned, are plain and unambiguous, and require that for an employee "to be eligible for accident benefits, the activity in which the employee is engaged at the time of injury must be a duty or responsibility required by her job." (*Id.*) Thus, the court concluded:

> It is an undisputed fact that Recupero was taking her break and going to get coffee at the time she sustained her injuries.

Breaks fall outside the purview of the plain language of the Accident Benefit Provisions. Therefore, given that Recupero was on break at the time, her injury cannot be said to be a direct and sole result of her job responsibilities.

(*Id.*)

Because, as the court below viewed the matter, the plaintiff had failed to raise an issue of material fact, the court ruled that the Committees' interpretation was consistent with the language of the plan, and that the Committees did not act arbitrarily or capriciously in denying Recupero's claim. (*Id.* at 12.)

Recupero's second contention below was that the Committees acted with a lack of good faith toward her because, she claimed, the EBC and the EBRC either never met to review her claim or failed to have a quorum present when they did meet. (*Id.*) The court below determined that Recupero's claim of lack of good faith was without evidentiary support in the record. (*Id.* at 13.)

The final issue decided by the court below was whether the notices of denial sent to Recupero by the Committees conformed with the statutory requirements of ERISA. (*Id.*) Recupero contended that the failure of the Committees to include specific reasons for denying her claim, or to cite to any specific plan provisions upon which the denial was based, precluded her from obtaining the information that was necessary for her to pursue her claim. (*Id.* at 14.)

On the issue of notice, the court below concluded that:

The denial letters sent to Recupero failed to conform strictly to the requirements set forth in ERISA, 29 U.S.C. § 33, and were insufficient as a matter of law. Nonetheless, as a practical matter, the letters were substantially sufficient to inform Recupero that her claim had been denied.

(*Id.*)

Having so concluded, the lower court then considered whether any remedy was available to Recupero for NET's failure to conform to the requirements of 29 U.S.C. § 33. (*Id.*) The court concluded that a remand to the EBC or the EBRC would be a useless formality because the evidence taken as a whole indicated that the denial of benefits was correct. (*Id.* at 15.)

On this reasoning, the district court granted summary judgment for NET on all claims. Recupero appealed. No cross appeal was filed.

## II. The Scope of Jurisdiction in a Case Involving Judicial Review of Out-of-Court Decisions

### A. Circumstances of the Present Appeal

As already noted, the district court had, and this court has, authority for judicial review of the out-of-court decisions that preceded commencement of this civil action in the district court. 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c); 28 U.S.C. §§ 636(c)(3) and 1291. Also, Recupero does not dispute that the judicial review is to be *"de novo"* and that she has the burden, in the circumstances of this case, of showing that the denial of her claim violated the "arbitrary and capricious" standard. (Appellant's Br. at 9, citing *Firestone Tire and Rubber, Inc. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955–56, 103 L.Ed.2d 80 (1989); *Pagan v. NYNEX,* 52 F.3d 438, 442 (2d Cir.1995) (judicial review of decision by pension plan administrator to deny long-term disability benefits, where pension provisions gave the plan administrator broad discretion to determine eligibility issues and no material fact was genuinely in dispute; "we are not free to substitute our judgment for that of the NYNEX Committee as if we were considering the issue of eligibility anew," and as if free to upset a reasonable interpretation; court reviews only the decision of the NYNEX Committee and, even if plan provisions were drafted by NYNEX, which is an entity different from the NYNEX Committee, and were ambiguous, the rule *contra proferentum* is inapplicable); *Diaz v. Seafarers Union,* 13 F.3d 454, 456–57 (1st Cir.1994) (trustees' decision denying retired seaman's claim for higher monthly pension benefit under Seafarers International Union's Pension Plan did not improperly apply the trustee rules about "break in service" that were promulgated pursuant to powers that the Plan instrument granted to the

trustees); *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 622–23 (D.Me.1987) (declining to overturn recoupment from worker, of sum equal to lump-sum Social Security payments, by insurer under Group Insurance Policy taken out by Plan)).

Though the contentions of the parties about the scope of the jurisdiction of the district court and this court differ, all parties to this appeal urge us to take an exceedingly expansive view of the scope of the courts' jurisdiction in reviewing ERISA benefit determinations. Each party to this appeal, at least in the alternative, urges us to hold that the district court had jurisdiction not only to apply the arbitrary and capricious standard of review to at least some aspects of the out-of-court decisions, but also to make findings on material and genuinely disputed factual issues that allegedly should have been decided and were not. In essence, we are asked to decide on the merits, or direct the district court to decide on the merits, every material factual issue as to which the out-of-court decisions under judicial review are challenged. We are asked to exercise plenary jurisdiction of the most expansive form.

We acknowledge that statements made about "*de novo* review" in some passages from authoritative sources, standing alone, may seem to support the parties' expansive jurisdictional contentions. We conclude, however, that a close examination of the entire array of relevant authority discloses that contentions of the parties in this respect flow from a misreading of *Firestone,* and a resulting misunderstanding of that case and its sequels. Such a misreading was anticipated by Justice (then Chief Judge) Breyer's opinion for the First Circuit in *Diaz,* 13 F.3d at 458. In that case an argument was made that a Plan amendment, granting broad discretion to trustees, showed that the previous provisions of the Plan did not grant discretion that broad. The *Diaz* opinion responds that the amendment "merely made express a power ... plainly implied all along," perhaps because the trustees "wanted to play it safe in light of *Firestone* and the possibility that lower courts would later misread it." *Id.*

The parties' expansive views about jurisdiction derive, at least to some extent, from their reading of what *Firestone* said about "*de novo* review." In that case, the Court declared:

> ... Consistent with established principles of trust law, we hold that a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless the benefit plan gives the administrator or fiduciary discretionary authority* to *determine eligibility for benefits* or to *construe the terms of the plan.*

489 U.S. at 115, 109 S.Ct. at 956–57 (emphasis added).

In several significant respects, the case before us in this appeal differs from *Firestone.* Nevertheless, in this case, one of the questions we must address may be stated in a generalized way in exactly the same phrase as that used by Justice O'Connor in describing the first of two questions before the Court in that case: "First, we address the appropriate standard of judicial review of benefit determinations by fiduciaries or plan administrators under ERISA." 489 U.S. at 105, 109 S.Ct. at 951.

The plans involved in *Firestone* were Firestone's three "pension and welfare benefit plans for its employees: a termination pay plan, a retirement plan, and a stock purchase plan." *Id.* "All three of the plans were ... governed (albeit in different ways) by ERISA." *Id.* In our case, also, the NET plan is governed by ERISA, but in some respects by the same ERISA provisions that applied to the *Firestone* plans and in other respects by different ERISA provisions. One difference is that the *Firestone* plans were "welfare and pension plans," and the NET plan is not. Other differences emerge as we apply the reasoning of the Court in *Firestone* to the present case.

*Firestone* determines that:

> [f]or purposes of actions under § 1132(a)(1)(B), the *de novo* standard of review applies regardless of whether the plan at issue is funded or unfunded and regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest.

489 U.S. at 115, 109 S.Ct. at 957. The role of the district court in applying the "*de novo*

standard" is affected, however, by the terms of the particular plan at issue. For example, "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest that conflict must be weighed as a 'facto[r] in determining whether there is an abuse of discretion.' *Restatement (Second) of Trusts* § 187, Comment *d* (1959)." *Id.*

In this case, no party challenges the proposition that NET plan documents did give some discretion, subject to judicial review, to the EBC and EBRC. Nor does any party question that the Committees were acting on behalf of an entity that was, within the meaning of the statutory phrase, an "administrator or fiduciary." Also, we do not understand the briefs of the parties as challenging the proposition that the Committees had some responsibility, and associated authority, with respect to "constru[ing] the terms of the plan," as that phrase is used in *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57. In any event, if this proposition is challenged, we conclude that the challenge is without merit.

As previously discussed, when the benefit plan gives the administrator or fiduciary discretion to determine benefit eligibility or construe plan terms, *Firestone* and its progeny mandate a deferential "arbitrary and capricious" standard of judicial review. *Id.* Thus, a deferential "arbitrary and capricious" standard of review applies, even though the review is also to be "*de novo* review" to assure compliance of the out-of-court decisionmakers with standards of conduct analogous to those applied to trustees under judicially developed law (which *Firestone* adopts to fill the gap left because "ERISA does not set the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations."). 489 U.S. at 109, 109 S.Ct. at 953.

Because of the combination of similarities and differences between the circumstances in *Firestone* and the circumstances before us in this case with respect to the array of different plan provisions and with respect to which among ERISA's various provisions apply, however, we must be especially observant of the extent to which the *Firestone* "*de novo* standard of judicial review" requires *de novo* determinations by the reviewing court and the extent to which, instead, it requires deference to an out-of-court decision that is not "arbitrary and capricious."

An example of the kind of problems we must consider is the determination of the meaning of provisions of the NET plan regarding "eligibility for benefits" of various types—in this case, "Sickness Disability Benefits" and "Accident Disability Benefits." Determining the meaning of such plan provisions ordinarily depends solely on deciding an issue of law with respect to manifested meaning of relevant provisions of the plan. A reviewing court, at least in the absence of plan provisions explicitly declaring otherwise, has authority to decide that a committee interpretation that varies from an unambiguously manifested meaning is arbitrary and capricious, and must be disregarded. If, instead, the reviewing court determines that the plan provisions are ambiguous or otherwise unclear, in some respect material to the outcome of the case, this determination of lack of clarity does not necessarily lead to treating the issue of meaning as one for decision by findings of fact in the district court (either by a jury or by the district judge). Instead, interpretive issues of this kind may be decided by the court as matters of law are decided, or they may be partly decided in court and partly on remand to the out-of-court decisionmakers, or applicable law may require some other allocation of decisionmaking functions. We say more on this subject in Parts II.B and II.C of this opinion, below.

Summarizing, we conclude that in view of the Supreme Court's pronouncement in *Firestone,* it is no longer in dispute that federal courts review some ERISA claims *de novo.* Even when *de novo* review is appropriate, however, it is often subject to some limitations. Thus, the phrase "*de novo* review," as used in the context of judicial review of out-of-court decisions of ERISA-regulated plan administrators or fiduciaries does not mean that a district court has "plenary" jurisdiction to decide on the merits, anew, a benefits claim.

We use the term "plenary" to describe jurisdiction of the court to disregard completely an "out-of-court decision" the court is reviewing and itself (with or without participation by a jury) decide anew all questions of fact bearing on the merits of the benefits claim.

### B. Contrasting Court Roles Because of Limits on Jurisdiction

#### 1. Limits Incident to Fiduciary Discretion Under Terms of a Benefit Plan

With respect specifically to an issue regarding eligibility of a claimant for benefits, precedents recognize that district courts do not have expansive plenary jurisdiction to decide the merits of a claim anew if "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Bellino v. Schlumberger Technologies,* 944 F.2d 26, 29 (1st Cir.1991) (quoting *Firestone,* 489 U.S. at 115, 109 S.Ct. at 956). Thus, if an ERISA out-of-court decisionmaker is given some discretion, the court reviews at least some (if not all) aspects of the out-of-court decision only to determine whether that decision was arbitrary and capricious. This key point expressed in *Bellino* is entirely consistent with many earlier and later First Circuit decisions that recognize the authority of the court to be less deferential, or not deferential at all, of out-of-court decisions by fiduciaries to whom a benefit plan did *not* grant discretionary authority to decide the matter at issue. *Smart v. Gillette Co. Long-Term Disability Plan,* 70 F.3d 173, 181 (1st Cir.1995) ("In ERISA cases ... court should scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights."); *Hughes v. Boston Mut. Life Ins. Co.,* 26 F.3d 264, 267 (1st Cir.1994) ("Where, as here, the administrator of an ERISA-regulated plan does not allege that it has discretion under the plan to interpret the terms of the insurance policy, judicial review of a denial of benefits entails no deference to the administrator's explanation of the plan...."); *Diaz,* 13 F.3d at 456–58 (arbitrary and capricious standard of review applied to trustee rules promulgated pursuant to "broad, discretionary authority" granted to the trustee in the trust instrument); *Rodriguez-Abreu v. Chase Manhattan Bank, N.A.,* 986 F.2d 580, 583–84 (1st Cir.1993) (*de novo* standard properly applied where "the relevant plan document did not grant discretionary authority to the Plan Administrator and the Named Fiduciaries did not expressly delegate their discretionary authority to the Plan administrator"); *Allen v. Adage, Inc.,* 967 F.2d 695, 697–98 (1st Cir.1992) (where nothing in the Plan indicates that another approach is to be used, it is appropriate for a reviewing court to afford *de novo* review).

#### 2. Jurisdictional Limits in Federal Courts Generally

An inquiry that is in essence jurisdictional is an appropriate early step toward full understanding of the meaning of the constitutional, statutory, and decisional mandates regarding the scope of the authority of federal courts in a case involving judicial review of an out-of-court claims decision.

■ Article III courts and other federal courts are not courts of general jurisdiction. *See, e.g., Owen Equip. & Erection Co. v. Kroger,* 437 U.S. 365, 374, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978). Even when some source of subject-matter jurisdiction appears of record (by reason of complete diversity of citizenship, for example, or the dependence of a claim on some federal question), federal courts are not automatically authorized to adjudicate every kind of related claim a party wishes to have decided. Rather, except as to instances of jurisdiction over claims of unconstitutionality of legislation, limits on the scope of jurisdiction of federal courts (other than the Supreme Court of the United States) are partly statutory. *E.g., Kokkonen v. Guardian Life Ins. Co. of America,* 511 U.S. 375, 377, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994).

■ A central characteristic of federal jurisdiction is that it tends to be claim-based, and thus specific to claims, rather than case-based, and thus general to an entire case if the court has jurisdiction over any claim. *See* American Law Institute, Federal Judicial

Code Revision Project, Tentative Draft No. 1, 33–34 (Apr. 8, 1997) (Commentary). The Reporter for this ALI Project, Professor John B. Oakley, in an introductory Memorandum to the Members of the Institute, identifies as an organizing principle used from an early stage of the history of this ALI Project, the observation that:

> subject-matter jurisdiction of the federal district court operates on a 'claim-specific' basis that is concealed and confused by the 'action-specific' language of the basic statutory grants of original jurisdiction to the district courts.

*Id.* at xvii. He adds:

> .... Although the basic statutes purport to confer federal jurisdiction over particular types of 'civil actions,' 'cases,' 'proceedings,' and the like, they have been administered on a claim-specific rather than action-specific basis, with the law of supplemental jurisdiction functioning in the background as the mechanism for determining which claims joined to a particular action that do not directly involve the kinds of issues or parties within the scope of Article III are nonetheless within federal judicial power because of their relationship to other claims involving issues or parties that fall within Article III's criteria.

*Id.* at xviii. We interpret "action," as used both in this passage and in a passage of the *Firestone* opinion, quoted above, as meaning "civil action," not "cause of action." Professor Oakley adds that these background themes are a part of the complex "structure of federal jurisdiction," commonly recognized as involving constitutional, statutory, and decisional "tiers" of authorization and limitation. *Id.* at 36–45.

We conclude that a theme of claim-specific limitations on the scope of federal judicial power extends also to a distinction between *plenary* jurisdiction, in a broad sense including authority to decide anew on the merits, and a *more confined* type of jurisdiction over a specific type of claim within the court's jurisdiction. A district court's subject-matter jurisdiction over a claim may be solely for judicial review of an out-of-court decision on the merits of the claim. This kind of limitation is primarily statutory in origin. It may be implicit, for example, in a statutory authorization for judicial review over out-of-court substantive decisions (of many different types) made by *governmental* agencies, under provisions of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). Also, this kind of limitation may be implicit in statutory provisions for judicial review of special kinds of out-of-court substantive decisions made by *private* decisionmakers such as those acting under employee benefits plan, making decisions reviewable in this case under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and 1132(c).

█ In a regime characterized in large part by limited jurisdiction, a statutory authorization for *judicial review* of out-of-court decisions does not imply authorization for a court to expand its jurisdiction to a *plenary* authority to decide, itself, all genuinely disputable factual issues decisive of the merits of claims. This point applies both to a court's acting on its own initiative and to a court's acting upon a consensual request by the parties that a court accept an expansion of its jurisdiction. We say more about consensual requests in Part II.E, below.

Also, to understand fully a source of authority regarding the scope of a court's jurisdiction when judicially reviewing an out-of-court claims decision, one must take account of the distinctive nature of a court's role in judicial review, in contrast with the role of a court in other civil actions generally.

A civil action for judicial review of an out-of-court decision is fundamentally different from a paradigm civil action asserting tort, contract, or property claims, or even alleged rights to equitable or declaratory relief. In cases of judicial review, ordinarily no right to jury trial is involved, and no need or authority exists to make factual findings of the kind regularly made by a jury, or by the trial judge in a nonjury trial.

If a need exists for deciding disputable factual issues in the course of judicial review of an out-of-court decision on the merits of a benefits claim, typically that need is associated with a dispute about the "record." We turn next to considering disputes of this kind.

### C. Deciding Disputes About the "Record"

#### 1. The Contrast Between Disputes About the "Record" and Disputes About the "Merits"

Deciding disputable factual issues about what is or is not properly a part of the "record" for judicial review is fundamentally different from deciding disputable factual issues going to the merits of a benefits claim.

The out-of-court decision under judicial review in this case was, or at least in ordinary circumstances should have been, a decision *on the merits*. The standard of judicial review of that decision, in whatever way it may be phrased and described, is to some extent deferential in the sense that the reviewing court is not to set aside a factual finding of historical fact for which the record on which the decision was made contained adequate support.

Ordinarily the deference to a decision *on the merits* extends also to deference to an evaluative inference on which the decision on the merits depends, at least unless the inference is a mixed-legal-factual inference. Just as appellate courts tend to give somewhat less deference to a trial court's mixed-legal-factual inference—*see, e.g., AIDS Action Comm. of Mass., Inc. v. Massachusetts Bay Transp. Auth.*, 42 F.3d 1, 7 (1st Cir.1994) (appellate court accords significant deference to trial court's factual determinations and most of its resolutions of mixed fact/law issues, letting them stand unless they are clearly erroneous, but engages in *de novo* review of trial court's application of a First Amendment standard to the facts of the particular case); *In re Extradition of Howard*, 996 F.2d 1320, 1328 (1st Cir.1993) ("The standard of review applicable to mixed questions usually depends upon where they fall along the degree-of-deference continuum; the more fact-dominated the question, the more likely it is that the trier's resolution of it will be accepted unless shown to be clearly erroneous.")—so likewise a court engaged in judicial review of an out-of-court decision may tend to give less deference to an inference-based decision that appears possibly to have been influenced by a mistake about the existence or meaning of an applicable legal rule or about how the legal rule applies in the particular instance. In applying such a less deferential standard, however, a reviewing court is not authorized to make, itself, a new decision replacing every factual finding of the out-of-court decisionmaker that goes *to the merits* and is challenged. The judicial review of the decision *on the merits* continues to be to some extent deferential.

In contrast, the trial judge's decision of a dispute *about the record* is typically not deferential.

A factual dispute *about the record* of an out-of-court decision of a claim under an employee benefits plan may involve a contention, by either party, that the "record" as produced by the decisionmaking entity contains documents or descriptions of non-documentary evidence not considered before the challenged decision was made, or documents or descriptions of evidence not properly considered (which one party or the other asks the trial court to "strike" or otherwise treat as irrelevant to judicial review). Obversely, the dispute may involve a contention that the record for the out-of-court decision should have included, and did not, additional materials (which one party or the other asks the trial court to rule must be taken into account).

If, after taking such a supplementation of the "record" into account, the trial judge determines that, by reason of departures from fair process, the challenged out-of-court decision cannot be affirmed, one obvious possibility is an order of remand for reconsideration by the committee or other entity that made the procedurally flawed out-of-court decision.

That form of remedy fits. Concerning a court's obligation generally, in framing relief, to fashion a remedy that fits and does not overburden a party, *see, e.g., Califano v. Yamasaki*, 442 U.S. 682, 702, 99 S.Ct. 2545, 2558, 61 L.Ed.2d 176 (1979) (injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs); *E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 746 (1st Cir.1996) (same).

First, the remedy for the departure from fair process is easily framed to fit within the

authorized scope of judicial review. Second, the nature of the remedy matches the nature of the error. Moreover, if the error was solely an error of the committee or other deciding entity, any other form of order is likely not to fit because it tends to place an undeserved burden or disadvantage on one party or the other.

We leave to be considered in Parts III.C and III.D of this opinion a defense contention in this case that if the record failed to contain evidence that would have supported plaintiff's claim, plaintiff failed to use her available opportunities to proffer more evidence.

To complete an explanation of the contrast between deciding disputes *about the merits* and deciding disputes *about the record,* we must take account of legal authority bearing on who is to decide a dispute *about the record* and by what procedures.

### 2. Who Decides?

As to who is to decide a dispute about the record, we canvass three possibilities (and variations on each) that are apparent in this case: (1) the out-of-court decisionmaker on remand from the district court; (2) the court or courts where judicial review occurs; and (3) a jury (or trial judge as finder of fact in a nonjury proceeding), guided on the law by the trial judge's rulings, those rulings being subject to correction on appeal.

The first possibility (remand to the out-of-court decisionmaker) may sometimes be appropriate, but is likely to result in delay, and perhaps very extended delay and expense if the dispute is not resolved to the satisfaction of all interested parties, and promptly. That kind of delay is inconsistent with the objective of providing workers and their dependents an inexpensive and expeditious method of resolving disputes over benefits claimed under an employee benefits plan. This is one of the multiple objectives underlying ERISA. *See, e.g., Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017, 1023–1025 (4th Cir.1993) (citing *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir.1990)).

The availability of the third possibility—jury trial—in ERISA cases is a matter on which many courts have spoken but in ways that may reasonably be understood as creating some unresolved conflicts. *E.g., compare Turner v. Fallon Community Health Plan, Inc.,* 953 F.Supp. 419 (D.Mass.1997), *with Padilla De Higginbotham v. Worth Publishers, Inc.,* 820 F.Supp. 48 (D.P.R.1993). We do not speak further to this conflict in this opinion, for the reason that in any event the record before us fails to show any disputable issue of fact appropriate for submission to a jury in this case, as we explain below.

■ The use of a jury to resolve disputes about the record for judicial review of out-of-court decisions in this case would be fundamentally inconsistent with the regime of limited jurisdiction of federal courts. Jurisdiction for judicial review cannot be expanded to encompass a jury role inconsistent with limitations on the court's jurisdiction. The jury is an arm of the court, and an arm that performs only a designated court function. In a case before the court solely for judicial review of an out-of-court decision, the jurisdiction of the court as a whole, including the jury, is limited to the function of determining whether the out-of-court decision is to be affirmed, or is to be set aside as arbitrary or capricious, or is to be reconsidered by the committee or other entity designated to decide the merits.

A recent decision of the Supreme Court in a very different context helps to explain both the rejection of this third possibility and the distinctive nature of the role of the trial judge in deciding disputes *about the record* as distinguished from disputes *about the merits.* That context involved a dispute about who decides an issue of interpretation of a patent claim as to which reasonable persons familiar with both the intricacies of patent law and all the relevant circumstances of the particular case might differ. Justice Souter, in the opinion of the Court, observed that a trial judge is better positioned than a jury to decide this kind of factual issue. *Markman v. Westview Instruments, Inc.,* ––– U.S. ––––, ––––, 116 S.Ct. 1384, 1387, 134 L.Ed.2d 577 (1996) ("Since evidence of common law practice at the time of the Framing does not entail application of the Seventh Amendment's jury guarantee to the construction of the [patent] claim document, we must

look elsewhere to characterize this determination of meaning in order to allocate it as between court or jury. Existing precedent, the relative interpretive skills of judges and juries, and statutory policy considerations all favor allocating construction issues to the court.").

Much of the reasoning of the Court in *Westview* applies to the role of a trial judge in deciding disputes *about the record* for judicial review. Compared with judges, jurors typically have less experience and training relevant to competence to review decisions of others with an appropriate degree of deference while at the same time assuring no misunderstanding or misapplication of governing law. And, historically, juries have had no part in judicial review of out-of-court decisions.

Concerning factors bearing upon who is better positioned to decide, in determining whether responsibility for deciding a factual dispute of a distinctive kind should be allocated to juries or instead to judges, the *Westview* opinion cited other Court decisions made in other contexts, including *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 451, 88 L.Ed.2d 405 (1985) (when an issue "falls somewhere between a pristine legal standard and a simple historical fact, the fact/law distinction at times has turned on a determination that, as a matter of the sound administration of justice, one judicial actor is better positioned than another to decide the issue in question."). Other decisions in the 1980s and 1990s have added more illustrations that, by analogy, reinforce the conclusion we reach in this case about the role of the judge in judicial review. *See, e.g., Thompson v. Keohane,* — U.S. ——, 116 S.Ct. 457, 133 L.Ed.2d 383 (1995) (habeas petitioner serving a sentence under a state conviction had confessed, during a two-hour tape-recorded session at the Alaska state trooper headquarters, to killing his former wife; federal district court denied his petition for habeas relief on the ground that the trooper had obtained his confession without giving *Miranda* warnings; the Ninth Circuit affirmed on the ground that the state court's ruling that the accused was not "in custody" for *Miranda* purposes was a "fact" determination as to which § 2254(d) establishes a presumption of correctness; this "Court has classified as 'factual issues' within § 2254(d)'s compass questions extending beyond the determination of 'what happened' "; "[t]his category notably includes: competence to stand trial; and juror impartiality"; "[w]hile these issues encompass more than 'basic, primary, or historical facts,' their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor"; "[t]his Court has reasoned that a trial court is better positioned to make decisions of this *genre,* and has therefore accorded the judgment of the jurist-observer 'presumptive weight' "; even so, we independently review the state "in-custody" determination because "[c]lassifying 'in custody' as a determination qualifying for independent review potentially may guide police, unify precedent, and stabilize the law"); *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 501 n. 17, 104 S.Ct. 1949, 1960 n. 17, 80 L.Ed.2d 502 (1984) ("A finding of fact in some cases is inseparable from the principles through which it was deduced. At some point, the reasoning by which a fact is 'found' crosses the line between application of those ordinary principles of logic and common experience which are ordinarily entrusted to the finder of fact into the realm of a legal rule upon which the reviewing court must exercise its own independent judgment."). *See also U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 920, 115 S.Ct. 1842, 1875, 131 L.Ed.2d 881 (1995) (Thomas, J., dissenting, joined by Rehnquist, C.J., O'Connor, J., and Scalia, J.) (citing *Bose* and declaring: "In certain areas, indeed, this Court apparently gives quite little deference to the initial factfinder, but rather 'exercise[s] its own independent judgment' about the factual conclusions that should be drawn from the record.").

### 3. Methods of Deciding Generally

We turn next to considering how a trial judge may go about performing the function of deciding disputes *about the record.*

### (a) Non-jury Trial

Precedents support a district court's holding a non-jury "trial" for distinctive and limited purposes associated with judicial review. An example is an opinion of Justice (then Judge) Breyer for the First Circuit in the context of judicial review of a decision of a governmental agency. *E.g., Valley Citizens for a Safe Environment v. Aldridge,* 886 F.2d 458, 460 (1st Cir.1989) (Breyer, J.) ("It could happen that a particular instance of judicial review of an EIS raises a 'genuine' and 'material' dispute of facts that requires a trial: Did the agency *know,* for example, about some important matter that the EIS ignored? ... However desirable this kind of evidentiary supplementation as an aid to understanding highly technical, environmental matters, its use is discretionary with the reviewing court.") (citations omitted). The practice seems equally applicable to judicial review of out-of-court decisions of private actors, such as the Committees whose decisions are under judicial review in this case.

Even when a district court proceeds with a non-jury trial of this kind, or a proceeding to take "evidence on motion," and determines that it is necessary to make some finding with respect to some historical fact (or to draw some reasoned inference from evidence) as to which a genuine dispute exists, ordinarily that factual finding made by the trial judge concerns matters bearing on fairness of the process by which the out-of-court decision was made and not the merits of the claim. A determination by a court that it has jurisdiction to perform this distinctive function does not imply that it must also have jurisdiction to find facts relevant to the merits.

### (b) Evidence on Motion

Also, with respect to preparing for ruling on a pending motion, a trial judge has, under Federal Rules, explicit authority to convene a kind of evidentiary proceeding that differs from taking evidence at trial under Federal Rule of Civil Procedure 43(a).

> Evidence on Motions. When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition.

Fed.R.Civ.P. 43(d). This procedural authority, however, regarding the manner of taking evidence, does not expand the trial court's jurisdiction. Rules of procedure apply to how the court may go about performing whatever function and role it is assigned by constitutional, statutory, and decisional law governing the court's jurisdiction.

Federal Rules of Civil Procedure do not purport to expand the court's jurisdiction from a role of judicial review to a role of plenary adjudication. This is a proposition inherent in the general aim that a court system's procedural rules be focused on fair and efficient procedures rather than either jurisdictional or substantive law. And it is a proposition inherent in the claim-based rather than case-based theme of federal subject-matter jurisdiction, explained in Part II.B above.

### (c) An Issue on Which Decision is Reserved

■ We have not decided, and need not decide today, whether a court, when reviewing a benefits determination, must restrict itself to the "record" as considered by the decisionmaker who interpreted the employee benefits plan. *See Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan,* 46 F.3d 938 (9th Cir.1995); *Quesinberry v. Life Ins. Co. of North America,* 987 F.2d 1017 (4th Cir.1993); *Luby v. Teamsters Health, Welfare, and Pension Trust Funds,* 944 F.2d 1176 (3d Cir.1991); *compare Davidson v. Prudential Ins. Co. of America,* 953 F.2d 1093, 1095 (8th Cir.1992).

Rather, we simply emphasize for clarity that making factual findings about what is or is not properly a part of the "record" for judicial review is fundamentally different from asserting plenary authority to decide the merits of a benefits claim.

■ As stated above, a trial court may take "evidence on motion" or convene a non-jury "trial" in order to develop a "record" suitable for judicial review of a challenged out-of-court decision. Also, a court may con-

vene either of these kinds of proceedings to determine whether the "record" on which the out-of-court decision was made is complete and, if not, what supplementation is appropriate. That the trial court has some range of discretion in this respect is reinforced by analogy to precedent. For example, a Fourth Circuit decision, calling attention to limitations on the district court's discretion, also declares that the court has some range of discretion to take evidence.

> [W]e continue to believe that the purposes of ERISA described in our *Berry* opinion warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator. In our view, the most desirable approach to the proper scope of de novo review under ERISA is one which balances these multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court in its discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, only when circumstances clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision.

*Quesinberry,* 987 F.2d at 1025.

#### 4. Comparison with Summary Judgment Procedures

Proceeding in the way just suggested may be better, for very pragmatic reasons, than hearing and deciding a motion or cross-motions for summary judgment. *See, e.g., Charlton Memorial Hosp. v. Foxboro Co.,* 818 F.Supp. 456 (D.Mass.1993). Summary judgment procedures were designed primarily for prompt and fair determination of factual issues *of the kind that go to the merits and would be decided by the jury in a jury trial* if genuinely in dispute. Under summary judgment procedure, the movant has the opportunity and burden of making a showing that no material factual issue is genuinely in dispute. The opponent has the opportunity and burden of proffering admissible evidence sufficient to support a factual finding favorable to the challenged claim, Fed.R.Civ.P. 56. Under Rule 56 and local rules implementing its mandates, a litigant who fails to take advantage of its opportunity by a timely proffer of evidence may be procedurally precluded from doing so later on grounds concerned with fair process. *E.g., Mas Marques v. Digital Equip. Corp.,* 637 F.2d 24, 29–30 (1st Cir.1980).

Invoking summary judgment procedures for factual issues *of the kind that do not go to the merits and would not be submitted to a jury* in any event is likely to produce misunderstanding and confusion about when and how the factual dispute is to be resolved. *See Charlton Memorial Hosp.,* 818 F.Supp. at 53–54. If the trial judge needs to hear and consider evidence to be prepared to decide the dispute over a factual issue bearing upon the "record" for judicial review, Rule 56 constraints do not apply, though the trial judge has discretion to invoke like procedures. Thus, no formal or procedural barrier exists to the trial judge's deciding disputed factual issues about "the record," in proceedings upon a pretrial motion rather than at trial. Such a pretrial motion need not be labeled as one for *summary* judgment. If giving the motion that label leads trial lawyers or the trial judge to assume that the judge can never decide before trial if a finding with respect to a genuinely disputable fact must be made, this flawed assumption reflects a misunderstanding that is likely to create confusion and delay. If, in any event, the decision of a factual dispute *about the record* is to be made by the judge, not by a jury, the trial judge is not required to await trial. Instead, the trial judge may exercise discretion about the method of proceeding, taking advantage of the opportunity for flexibility about scheduling hearings in preparation for the decision *about the record.*

#### 5. Providing for Discovery and Proffers of Relevant Evidence

Of course, the trial judge should (and absent some ground of preclusion, must), before deciding a disputable factual issue that may be decisive of a dispute *about the "record",* give parties a fair opportunity to discover and present relevant evidence bearing upon the issue. Ordinarily it is a good practice to do this by an order of record

that clearly specifies the time within which any proffer is to be made, and thus reduces any risk of misunderstanding.

Once this requirement of fair process has been satisfied, ordinarily it is in the public interest and the interest of the parties that factual disputes of the kind that are to be decided by the trial judge, and in no event by a jury, be decided sooner rather than later. Exceptional circumstances of a particular case may make deferral appropriate, however, and this opinion is not to be interpreted as stating any hard-edged rule of practice in this respect. We have called attention to these matters in this opinion solely for the purpose of clarifying the nature of judicial review in respects that appear to have generated misunderstandings.

### D. Independent Claims and Overlapping Elements

#### 1. Various Types of Independent Claims

For completeness, we take note of another source of potential misunderstanding, even though it does not apply to this case. In some instances, an independent claim over which a district court does have plenary jurisdiction for trial on the merits may include, among the elements of that claim or a defense to it, a factual issue that is the same or almost the same as some factual element of a claim for benefits under an employee benefits plan, decisions regarding which are subject to judicial review rather than trial on the merits. In such an instance, the court has jurisdiction to try the *independent claim,* even though the court's role in relation to the plan benefits claim is limited to judicial review. Some potential illustrations are identified immediately below.

#### 2. Forbidden Retaliatory Motive or Other Discriminatory Animus

An independent claim may arise when a party contends that gender or racial animus was a motive for termination of employment in retaliation for previous protected conduct of the employee in asserting that conditions of employment were discriminatory. If (1) the party making such a contention demands a jury trial and proffers sufficient evidence to show a genuine dispute of material fact, and (2) jury trial of the independent claim is appropriate under the law governing trial of that claim, the trial judge has two very distinct and materially different responsibilities. One is to determine, "as a matter of law," whether the proffered evidence is sufficient, if credited by the jury, to support the independent claim of discriminatory termination of employment and, if so, to submit that claim to the jury by an appropriate charge and verdict form. The trial judge's other responsibility is to perform the function of judicial review of the challenged out-of-court decision of the claim for benefits under the employee benefits plan. For the reasons explained in Parts II.B and II.C above, this responsibility continues to be performed without participation of the jury, even though the independent claim that is before the court in the same civil action is tried to a jury.

#### 3. Violation of Obligation to Provide Plan Information

Another kind of claim that, in appropriate circumstances, might be treated as an independent claim is a claim of violation of the ERISA requirement of production of plan information, 29 U.S.C. § 432(c). We do not probe this possibility in this case, because Recupero has not claimed a violation of this provision; instead, as explained in Part III.D of this opinion, below, she has claimed a violation of notice requirements, with respect to her opportunity to challenge a committee decision, under 29 U.S.C. § 1133.

#### 4. Overlapping Components of an Independent Claim and a Claim Under Judicial Review

It is possible that in some circumstances some factual component of an independent claim, or the measure of recovery if that claim is proved, will closely coincide with a component decisive of the merits of the out-of-court decision that is under judicial review. If this happens, a host of debatable issues may exist concerning claim or issue preclusion, the right to jury trial, and procedural rules and practices bearing on case management in the district court.

No independent claim was alleged in the complaint in this case, however, and we do not undertake to address any of the added complexities that arise from joinder of a claim for judicial review and some independent claim. This case presents only a question as to scope of jurisdiction in a more typical setting of judicial review of an out-of-court benefits decision.

### E. Consensual Arrangement for Claims Determinations

In this case, the parties assigned to the EBC in the first instance, and to the EBRC in the second instance, the function of making decisions about the merits of individual claims to benefits under the plan. This kind of consensual arrangement is legally permissible. *See Firestone,* 489 U.S. at 115, 109 S.Ct. at 956–57.

Here, however, each party is in essence asking this court to construe plan provisions as consensually overriding constitutional and statutory limits on the jurisdiction of the courts, or to hold that an opposing party is estopped or precluded from asserting that the plan provisions do not authorize *plenary* consideration of plaintiff-appellant's claims on the merits. Included is the request that the district court make factual findings on any genuinely disputable issues material to the outcome on the merits.

When the law authorizes parties to make their own consensual arrangement for deciding individual claims for benefits, ordinarily the parties may prescribe their own set of rules about how decisions are to be made, as long as they do not transgress prescribed legal limits on the scope and nature of consensual arrangements. *E.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 628–39, 105 S.Ct. 3346, 3354–60, 87 L.Ed.2d 444 (1985)(parties' agreement to arbitrate antitrust claims is enforceable absent a showing of circumstances that would warrant setting aside the forum selection clause). If, however, the parties attempt by their consent to expand the scope of a district court's jurisdiction beyond that authorized by law, their attempt is legally unenforceable in this respect for the reasons explained in Parts II.B and II.C of this opinion.

### F. Summary of Conclusions Regarding Scope of Jurisdiction

The constitutionally and statutorily limited jurisdiction of federal courts cannot be expanded by a stipulation or joint request of the parties that the courts become their privately-appointed alternative to the method of adjudication available to them under law. Ordinarily, claims benefit determinations of consensually designated private decisionmakers on whom plan provisions confer authority to exercise discretion are subject to judicial review under an arbitrary and capricious standard, but not to plenary determinations on the merits.

In contrast, the decision of disputes about the "record" for judicial review ordinarily are within the scope of the district court's jurisdiction, and the trial judge's role ordinarily extends to deciding factual as well as legal components of such a dispute about the "record."

Independent claims in addition to a claim for judicial review may present added complexities, but we need not and do not address these matters because no independent claim is asserted in this case.

With these fundamental characteristics of the legal system as background, one may locate the legal and factual issues of a particular civil action in the larger legal landscape. In the remainder of this opinion, we consider each of the material contentions of the parties regarding the precise way in which this controversy has proceeded both before and after the filing of the civil action in the United States District Court for the District of Massachusetts.

## III. Particular Contentions in This Case

### A. Introduction

The parties to this appeal have acknowledged, and we have noted, that some aspects of the out-of-court decisions of the NET Committees must be judicially reviewed under an "arbitrary and capricious" standard. Other aspects of the challenged decisions

must be decided either as matters of law are decided or under a standard less deferential than an "arbitrary and capricious" standard. Also, as proceedings have developed both before and after the filing of the civil action, some issues earlier in controversy have become moot or an opportunity for challenge has been lost under rules of procedural preclusion.

In this Part III, we discuss separately these different kinds of issues, beginning with asserted violations of the applicable "arbitrary and capricious" standard.

**B. Alleged Violations of "Arbitrary and Capricious" Standard**

Having determined that the role of the courts with respect to typical claims under an employee benefits plan is jurisdictionally limited to review, if a plan administrator or fiduciary was given discretion to decide particular claims, we now consider whether Recupero has shown that the Committees created to decide claims of the type at issue in this case acted arbitrarily and capriciously. Recupero argues:

> Ms. Recupero was seriously injured in an elevator accident at her workplace while she was on-duty and being paid by the company. At the time of her accident she was in the course of her employment and was under the direction and control of her employer. The only reasonable meaning of the Plan language is that Ms. Recupero sustained an "accident" and not "sickness" and it was arbitrary and capricious of the Plan to deny her "accident" disability claim.

(Appellant's Br. at 6–7.) Recupero contends that she was:

> . . . en route to obtain coffee in the building lobby at the direction of her supervisor on company time at the time of the accident. She made . . . [an] adjustment [from her usual time for a break] at the direction of her supervisor for the sole purpose of furthering, and in direct connection with, the performance of her duties to enable her to establish a conference call with a customer at a time when she would otherwise have been away from her usual work station.

(*Id.* at 13). Thus, she argues, she was "on-duty" at the time that she sustained her injury, and is entitled to "accident benefits." (*Id.* at 14.)

The defendant-appellee counters that "[i]t is undisputed that Recupero was injured during break time, after leaving her work station while on an elevator en route to a coffee shop." (Appellees' Br. at 7.) This fact, NET contends, shows that Recupero was not "solely" and "directly" engaged in the performance of duties at the time of the injury. (*Id.*) Thus, the defense argument goes, the Committees did not act arbitrarily and capriciously in determining that Recupero was not entitled to "accident benefits." (*Id.*)

As already noted, the district court ruled in favor of NET on this issue. The district court rejected Recupero's argument that, because she was taking her break at the request of her employer, her injuries should entitle her to "Accident Disability Benefits." The court stated:

> Recupero's argument is predicated on the assertion that she was taking her coffee break a half hour early at the request of her supervisor in order to accommodate a job-related phone call which she was expecting. Such a fact is not properly before the court for two reasons. First, the court, when applying the arbitrary and capricious standard of review, may only review the actions of the fiduciary in light of the evidence which was before it at the time it made its decision. It does not appear that the NET Benefits Office, the EBC or the EBCRC had the benefit of considering this fact. (# 20, Exh. 2, Affidavit of Richard Waldron, ¶ 7). Second, this is a "mere allegation" unsupported "by affidavits or as otherwise provided" under Fed.R.Civ.P. 56(e) since Recupero offers no evidence to this court to support this contention.

(*Recupero v. New England Telephone & Telegraph Co.,* Civil Action No. 94–12266–MLW, Memorandum and Order, Sept. 20, 1996 at 9 n. 5.)

The EBC and the EBRC decided that Recupero qualified for "Sickness Disability Benefits" only. The district court correctly

concluded that this decision was not arbitrary and capricious. Three lines of reasoning support this conclusion.

First. The court below correctly determined that Recupero had not proffered evidence before the EBC or EBRC of any irregularity in the break from work that she was on when the incident occurred. (*Id.*) Nothing in the record before the Committees, the record before the district court, or the record before this court suggests otherwise. If Recupero did not proffer, before the Committees, factual support for a contention that the circumstances of the incident brought it within the meaning of an "accident" because she was taking her break at a specific time, at the behest of her supervisor, in order to allow her to perform her duties at a later time, then the record before the EBC and the EBRC was not sufficient to support a court determination, on judicial review, that the decisions of the Committees were arbitrary and capricious.

Second. Despite the difficulties of drawing bright lines of separation and fitting every conceivable circumstance of injury into either the category of "accident" or the category of "sickness," the Committees did not act arbitrarily and capriciously when interpreting "on-duty" to exclude break time, regardless of the nature of any reason or reasons for the break. A plan may prescribe a definition of "on-duty" that takes into account the myriad of possible ways in which and times at which an employee may be injured. A plan that does so may require of the out-of-court decisionmakers, in deciding a particular claim, that they make an evaluative determination rather than a rigorously logical application of bright-line rules that leave no choice, even reasoned choice, in arriving at a decision concerning the merit of a particular claim.

It is true that in the context of trial of a paradigm tort or contract claim, "evaluative issues" often go to a jury for decision. *See, e.g., Springer v. Seaman,* 821 F.2d 871, 876 (1st Cir.1987) (in tort law, not only ordinary fact questions but also "evaluative applications of legal standards (such as the legal concept of 'foreseeability') to the facts are properly jury questions"), *cited with approval in Dedham Water v. Cumberland Farms Dairy,* 972 F.2d 453 (1st Cir.1992).

In the context of judicial review of out-of-court decisions, however, if employee benefit plan provisions confer discretion on an out-of-court decisionmaker, ordinarily the evaluative determinations of that decisionmaker are judicially reviewed under a deferential standard, as explained in Parts II.B and II.C of this opinion.

Section 5(5) of the plan before us in this record is one of the provisions the interpretation of which was challenged in this case. It provides:

> Relationship of Injury to Employment. Accidental injuries shall be considered as arising out of and in the course of employment *only where the injury has resulted solely from accident during and in direct connection with the performance of duties* to which the employee is assigned in the service of the Company, or was assigned by the Former Affiliate or Associated or Allied Company from which the employee was reassigned as of January 1, 1984, or which he is directed to perform by proper authority, or in voluntarily protecting the Company's property or interests. There must be a clear and well-established history of the cause and circumstances of injury accidentally inflicted, which must be sufficient to produce the alleged injury, and there must be satisfactory evidence that such injury renders the employee unable to perform his duty in the service of the Company.

(Appellees' Br. at 59–60) (emphasis added). In view of the emphasized phrase in this passage quoted from the plan, we cannot say that the district court erred in its interpretation of the plan as supporting NET's position in this appeal.

Third. Recupero apparently bases her argument, in part, on an assumption that because she was eligible for worker's compensation, her injury should be treated, as a matter of law, as having occurred "on-duty." This assumed premise is erroneous, as a matter of law. Neither ERISA nor any other source of authority declares that the standards of eligibility for workers' compensation

benefits and accident disability benefits under an ERISA-regulated plan be the same. *See Pagan v. NYNEX Pension Plan,* 52 F.3d 438 (2d Cir.1995). Further, the plan provisions in this case do not explicitly prescribe a test for "on-duty" status that mirrors the test commonly used in worker compensation systems.

For these reasons, we conclude that the district court did not err in deciding that the decisions of the EBC and the EBRC were not arbitrary and capricious.

### C. Recupero's Request for Reclassification of Benefits

We take note that plaintiff is not seeking "Sickness Disability Benefits" beyond those already paid to her. Rather, she is asking merely that we order, or direct the district court to order, that the benefits already paid to her as "Sickness Disability Benefits" be declared to be reclassified as "Accident Disability Benefits." (Appellant's Br. at 1 n. 1.)

Recupero does not argue, nor do we know of any ground on which she could creditably do so, that she was entitled to such a reclassification decision by the district court, or is entitled to have this court declare such a reclassification. Instead, she asks this court, as a matter of discretion in the interests of justice, to declare the reclassification or order the district court to make a discretionary decision regarding reclassification.

We are not persuaded that we should exercise discretion in this way at this late stage in the development of proceedings regarding Recupero's claim for benefits, even if we were to determine that we have jurisdiction to do so. Recupero has failed to place before us, or before the district court, a record showing that she made a request that the Committees make a determination of this type. Nor has she called to our attention any good cause for determining that she should be allowed to present this request at this late point in the face of the apparent unfairness of allowing a claimant to proceed on one set of contentions to the threshold of final resolution and only then assert a new theory of claim. In these circumstances, without undertaking to resolve very substantial doubts about our jurisdiction to entertain such a late request for a declaration of "reclassification" of benefits she was paid and accepted as "Sickness Disability Benefits," we conclude that her request must be denied as untimely. This conclusion is amply supported by precedent. *See, e.g., United States v. Bongiorno,* 106 F.3d 1027, 1034 (1st Cir. 1997) (constitutional arguments not raised in the lower court cannot be advanced on appeal); *Armstrong v. Jefferson Smurfit & Corp.,* 30 F.3d 11, 13 n. 4 (1st Cir.1994) (argument that reimbursement of taxes paid in lump-sum payments could be benefits under ERISA waived when made for the first time on appeal.)

### D. Interpretation of Plan Provisions

As a general rule (independently of the special characteristics of ERISA claims cases), disputes over interpretation of a document (or set of documents taken together as a unit) are decided as matters of law are decided. *See, e.g., Den Norske Bank, AS v. First Nat. Bank of Boston,* 75 F.3d 49, 52 (1st Cir.1996)("Normally, contract interpretation is a question of law for the court."). And, as a general rule, courts may determine that an out-of-court decision was arbitrary and capricious if that decision was explicitly or implicitly founded on an error of law. *E.g., United States v. Members of Estate of Boothby,* 16 F.3d 19, 21 (1st Cir.1994) ("In scrutinizing administrative actions, a reviewing court is free to correct errors of law, but, otherwise, the court is limited to a search for arbitrary or capricious behavior.").

If a genuine dispute exists regarding existence of a contract, ordinarily that issue "is a question of fact, for the jury ... [unless] the evidence consists only of writings, or is uncontroverted," in which event "the court can decide the issue." *American Private Line Services, Inc. v. Eastern Microwave, Inc.,* 980 F.2d 33, 35 (1st Cir.1992). Even if the core of the dispute is what interpretation to give to a document or to uncontroverted oral communications, in exceptional circumstances an issue of interpretation on which reasonable persons may

differ is submitted to a "trier of fact." *Boston Edison Co. v. F.E.R.C.*, 856 F.2d 361, 367 n. 3 (1st Cir.1988). But this exception cannot be invoked by a party who has failed to make any proffer of documentary or other evidence sufficient to support a determination of ambiguity in some respect material to disposition on the merits of the controversy before the court. *See, e.g., Donoghue v. IBC USA (Publications), Inc.*, 70 F.3d 206, 215 (1st Cir.1995) (a hypothetical allegation of meaning, whether ambiguity is alleged or not, is inadequate to present a genuine dispute as to a material issue; even if a party is "claiming to benefit from ambiguity (for example, by being allowed to proffer extrinsic evidence supporting its interpretation) [that party] must show ambiguity in the meaning of the agreement with respect to the very issue in dispute"). The record before us in this case is devoid of any such proffer.

For these reasons, we conclude, without deciding unsettled issues about jury trial in ERISA cases generally (see decisions cited in Part II.C.2, *supra* ), that in no event would it be proper in this case to submit to a jury issues of interpretation of the NET plan provisions bearing upon "Accident Disability Benefits" claimed by Recupero. Moreover, such an interpretive question could go to a jury only if the court, in which the jury sits, has plenary jurisdiction. For the reasons explained in Parts II.B and II.C of this opinion, the exceptional allowance of a jury decision on an interpretive question does not apply when the court's role is limited to judicial review of an out-of-court decision.

### E. Futility of Remand

NET argues that the same outcome on issues of interpretation of NET plan provisions must be reached on another ground. The argument is that the record before the district court was sufficient, and the record on appeal is sufficient, for this court to determine that remand would be futile because, from undisputed facts that Recupero does not suggest could be challenged if remand were ordered, it is apparent that Recupero's claim fails on the merits. We conclude that, though from a limited perspective, the decision of this matter might have seemed debatable, closer probing supports this defense position with respect to issues concerning the meaning and application to this case of the NET plan provisions regarding "Accident Disability Benefits."

Recupero has entirely failed, in proceedings before this civil action was filed, in proceedings in the court below, and on appeal, to make any proffer of relevant evidence that could be determined to be sufficient to support her contentions that plan provisions on eligibility for Accident Disability Benefits should be interpreted in a way that would present a genuinely disputable factual issue bearing upon her claim on the merits.

### F. Denial of Notice

As an independent basis for rejecting Recupero's claim for some form of relief because of alleged violation of 29 U.S.C. § 1133 with respect to notice about how to pursue her rights under the plan after denial of her benefits claim, NET contends that Recupero failed to proffer any admissible evidence, at any stage of proceedings, to support any finding of prejudice to her. (Appellees' Br. at 9, 20–21.) The district court determined that Recupero had not proffered evidence sufficient to support a finding of prejudice in any relevant sense. (Memorandum and Order, Sept. 20, 1996 at 14–15.)

In effect, Recupero has attempted to demonstrate prejudice by arguing that it is inherent in the circumstances of any claim of the type she has made, rather than by proffering evidence, either to the Committees or to the district court, to show that in some special way the circumstances of her case were unique or at least exceptional. We conclude that allowing a claim for relief because of inadequacy of formal notice without any showing that a precisely correct form of notice would have made a difference would result in benefit claims outcomes inconsistent with ERISA aims of providing secure funding of employee benefit plans.

In these circumstances, we conclude that the determination by the district court that Recupero failed to show prejudice in a relevant sense is unassailable, regardless of

whether we treat it as a factual finding by the district court or instead as a determination of insufficiency of proffered evidence "as a matter of law."

## CONCLUSION

For the reasons stated in this opinion, it is ORDERED:

The judgment of the district court is ***AFFIRMED.*** Costs of the appeal are awarded to Appellees.