# United States Court of Appeals
## For the First Circuit

No. 04-2219
No. 04-2252

ANGELA DIGREGORIO,

Plaintiff, Appellant,

v.

HARTFORD COMPREHENSIVE EMPLOYEE BENEFIT SERVICE COMPANY;

PRICEWATERHOUSECOOPERS LONG TERM DISABILITY PLAN,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Douglas P. Woodlock, U.S. District Judge]

Before

Torruella, Lipez, and Howard, Circuit Judges.

Stephen L. Raymond for appellant.
David B. Crevier, with whom Theodore F. Glockner was on brief,
for appellees.

September 8, 2005

**LIPEZ, Circuit Judge**.    Plaintiff-appellant Angela DiGregorio appeals the district court's judgment in favor of defendants-appellees Hartford Comprehensive Employee Benefit Service Company ("Hartford") and PricewaterhouseCoopers Long Term Disability Plan ("the Plan") on her claim of entitlement to long-term disability ("LTD") benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C § 1001-1461, as amended ("ERISA").  DiGregorio challenges only the district court's denial of her alternate prayer for relief requesting a remand to Hartford, the Plan administrator, for supplementation of the administrative record, on the ground that Hartford and the Plan failed to provide a reasonable opportunity for full and fair review of her benefits claim in violation of ERISA § 503, 29 U.S.C. § 1133, and its implementing regulations.  Because the district court did not err in determining that a remand was unwarranted on the facts of this case, we affirm the district court's judgment.[1]

---

[1]Hartford and the Plan filed a notice of cross-appeal but acknowledge in their answering brief that they do not challenge any of the district court's factual findings or legal conclusions, and that they seek affirmance of the district court's judgment.  We therefore deem all arguments on the cross-appeal to be forfeited and dismiss the cross-appeal, No. 04-2252.  DiGregorio's February 23, 2005 motion to order the cross-appeal "denied as waived" is denied as moot.  See 1st Cir. R. 27(c).

The facts of this case are set forth in detail in the district court's opinion. See DiGregorio v. PricewaterhouseCoopers Long Term Disability Plan, No. 03-11191, 2004 U.S. Dist. LEXIS 15485 (D. Mass. Aug. 9, 2004). We relate only those facts, undisputed unless otherwise noted, that are relevant to this appeal.

**A.      DiGregorio's Claim for LTD Benefits**

DiGregorio worked as a secretary for Coopers & Lybrand (now PricewaterhouseCoopers) from September 1988 through early February 1995, when she began receiving worker's compensation. In July 1995, DiGregorio applied for LTD benefits under the Coopers & Lybrand Employee Long Term Disability and Income Plan, now the PricewaterhouseCoopers Long Term Disability Plan. In support of her claim, she submitted a statement by her attending physician, Dr. Walsh, diagnosing DiGregorio with bilateral carpal tunnel syndrome that totally disabled her from performing her job as a secretary. The Plan administrator, then the Pacific Mutual Life Insurance Company, approved DiGregorio's claim in September 1995, and DiGregorio began receiving LTD benefits for the period beginning August 1, 1995.

Under the terms of the Plan, DiGregorio was entitled to LTD benefits for "Total Disability" for a period of up to two years so long as she could "perform no duty pertaining to [her]

occupation" as a secretary. DiGregorio was entitled to continue receiving benefits beyond the two-year period only so long as she could "perform no duty pertaining not only to [her] occupation but to <u>any</u> occupation . . . for which [she] is, or may be, qualified by education, training or expertise" (emphasis added). DiGregorio continued to receive LTD benefits beyond the initial two-year period.

**B.        Hartford's Termination of DiGregorio's LTD Benefits**

In July 1999, PricewaterhouseCoopers retained Hartford to administer claims for benefits under the Plan. In August 1999, at Hartford's request, DiGregorio completed an "Authorization to Obtain and Release Information" permitting Hartford to periodically obtain DiGregorio's updated medical information so that Hartford could verify her disability status and eligibility for benefits.

On April 18, 2001, Hartford notified DiGregorio by letter that "the evidence submitted in support of your claim does not establish that you meet the Plan definition of Total Disability on or after April 16, 2001." Hartford stated that it had based its "decision to deny your claim for benefits upon Plan language and all documents contained in your claim file, viewed as a whole."

Hartford then identified four specific pieces of information that it had considered: (1) "Medical records received from [an orthopedic surgeon,] Douglas Howard, M.D.[,] regarding your April 11, 2000 evaluation," (2) "Employability Analysis Report

-4-

completed . . . on March 22, 2001," (3) "Telephone conversation with you on November 28, 2000," and (4) "Telephone conversation with you on February 5, 2001."

Hartford explained:

> The medical record completed by Dr. Howard on April 11, 2000 indicates that you are capable of working full time in an occupation that does not require repetitive use of your hands. Dr. Howard states that he does not find you totally disabled but only partially disabled. He indicates that you would be capable of performing a sedentary job on a full time basis that did not require repetitive use of your hands.

Hartford noted that although DiGregorio had indicated in the telephone conversations that she "would have [a different physician,] Dr. Jupiter[,] send medical information [to Hartford] concerning [her] condition[,] [t]o date, this information has not been received. We do not have sufficient medical documentation to verify continued disability."

Finally, Hartford stated: "We have identified the following positions that you could perform based on your abilities as identified by Dr. Howard. These positions are both sedentary and do not require repetitive use of the hands." The positions were: "Customer-Complaint Clerk," "Insurance Clerk," "Information Clerk, and "Counter Clerk." Hartford determined that because DiGregorio could perform duties pertaining to these occupations, "for which [she was], or may be, qualified by education, training

-5-

or expertise," she did not meet the Plan definition of Total Disability and was not entitled to LTD benefits.

Hartford then reiterated: "In reviewing your claim, [Hartford] considered your claim file as a whole for purposes of determining your eligibility [for] benefits under the Policy." Hartford concluded the denial letter by describing DiGregorio's rights "to appeal our decision and review pertinent documents in your claim file," as well as to submit

> additional information not previously submitted which you believe will assist us in evaluating your claim for Long Term Disability benefits, . . . . [s]pecifically, medical documentation that you are unable to perform any occupation or work due to your abilities, training, education and experience, or documentation that you have a Disability which prevents you from performing other occupations.

**C.        DiGregorio's Requests for Her Entire Claim File**

In a letter dated September 25, 2001, DiGregorio informed Hartford, through counsel, of her intent to appeal Hartford's decision to terminate her benefits and requested copies of "all documents upon which [Hartford] ha[d] relied . . . in making [its] unfavorable determination," namely, her "<u>entire</u> claim file," including "[a]ny reports or other documents relating to or connected with a review of Ms. Di[G]regorio's medical records by a member of your medical department, or outside consultant."

That same day, September 25, 2001, Hartford provided copies of (1) an Employability Analysis Report prepared by a

Hartford rehabilitation clinical case manager, dated March 22, 2001, which identified the four "Clerk" occupations Hartford alleged DiGregorio could perform, and (2) Dr. Howard's Follow-Up Orthopedic Evaluation based on his April 11, 2000 examination of DiGregorio, which documented her medical history and the results of his examination. According to the Evaluation, Dr. Howard made the following recommendation:

> At this time I do not find [DiGregorio] totally disabled but only partially disabled. She should have no repetitive activities or repetitive use of the hands, but this would allow any type of sedentary occupation that was non-repetitive. . . .

DiGregorio repeated her request for her entire claim file by letter from her counsel dated October 1, 2001. By letter of October 8, 2001, Hartford responded that "we cannot release any documents contained in Ms. Di[G]regorio's claim file that are not pertinent to the denial of her claim. The documents that accompanied our September 25, 2001 letter are those that were used in making our determination."

DiGregorio made a third request for her entire claim file through counsel by letter dated October 25, 2001, stating, "it is our position that you must have, and indeed should have, considered Ms. DiGregorio's entire claim file in making a decision to terminate benefits on this claim . . . . We believe Ms. DiGregorio is deprived [of] a full and fair review of her claim absent the

provision of these materials."  Hartford's reply by letter dated

October 30, 2001 stated:

> While Ms. DiGregorio's entire claim file has
> certainly been reviewed, the documents that
> pertain to the denial of her claim are . . .
> the Employability Analysis Report of 03/22/01
> and the 04/11/01 evaluation by Dr. Douglas
> Howard.  The most recent medical documentation
> we have on file indicates that Ms. DiGregorio
> is not Totally Disabled from any occupation,
> and, therefore, that is information used in
> making our determination to deny benefits.

**D.        DiGregorio's Appeal to Hartford**

In her appeal letter to Hartford through counsel on

November 8, 2001, DiGregorio presented her arguments in support of

her claim to benefits, including her challenges to the accuracy and

reliability of Dr. Howard's recommendation and the results of the

Employability Analysis Report.  DiGregorio also provided additional

materials for Hartford's review, including: (1) a laboratory report

from Massachusetts General Hospital showing the results of an

Electromyography ("EMG") test conducted on DiGregorio on November

29, 2000, (2) a February 6, 2001 letter to DiGregorio from Dr.

Jupiter, (3) a July 31, 2001 treatment note made by Dr. Jupiter,

and (4) an October 12, 2001 letter to DiGregorio's attorney from

Dr. Jupiter.

Dr. Jupiter's letter to DiGregorio of February 6, 2001

stated that "electrical evaluation of your hand and wrist . . .

shows substantial and serious compression of the median nerves in

the carpal tunnel. . . .  I believe that the problem can affect

your ability to function and that you have at least for the present an ongoing disability as a result of this." His treatment note of July 31, 2001 stated that "an EMG and nerve conduction study . . . afforded a compressive neuropathy in the median nerve. This interferes with [DiGregorio's] ability to function. She remains disabled because of this and will do so on a continued basis unless intervention proves successful. . . . Her prognosis is guarded." Dr. Jupiter's letter to DiGregorio's attorney of October 12, 2001 stated: "An EMG and nerve conduction study confirm[] that [DiGregorio] still has dysfunction of her nerve. On the basis of this and her symptoms she continues to be disabled in her secretarial line of work and feels that she is unable to perform bimanual tasks in any form of work."

Although DiGregorio did not request copies of any documents considered during Hartford's review of her appeal in her November 8, 2001 letter, she reiterated her position that Hartford's failure "to provide her entire claim file in response to her request for copies of documents 'pertinent' to the denial of her claim eviscerates her right to a full and fair review of this claim under ERISA."

Hartford upheld its termination of DiGregorio's claim for LTD benefits by letter on December 12, 2001, based on its consideration of "Plan language and all documents contained in [DiGregorio's] claim file," including the additional information

DiGregorio had submitted with her appeal letter. Hartford first noted that DiGregorio did not appear to be under the regular care of a physician, as required by the Plan. Hartford then addressed DiGregorio's disability status, explaining that "[t]he testing and other medical documentation supplied does support an inability to use her hands in a repetitive manner. However, there is no medical documentation to support her inability to perform an occupation that does not require repetitive hand motion," such as any of the four "Clerk" occupations identified in the March 22, 2001 Employability Analysis Report.

Hartford also indicated that it had reviewed an additional document not submitted by DiGregorio, namely, a "Report from Dr. Jesse Jupiter, received in our office 12/06/01." Hartford explained:

> In an attempt to further clarify Ms. Di[Gre]gorio's functional capacity, [a registered nurse employed by Hartford] sent a letter to Dr. Jupiter with specific questions related to her disability and functional ability. When asked if he agreed with the restrictions identified by Dr. Howard of 04/11/00, Dr. Jupiter responded affirmatively. If you recall, Dr. Howard stated that Ms. Di[G]regorio is capable of full-time work in an occupation that does not require repetitive use of her hands.

### E.        Proceedings in District Court

On October 1, 2003, DiGregorio filed an amended complaint in federal district court under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which empowers a plan participant or beneficiary

to bring a civil action "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan."  In her complaint, DiGregorio alleged that she qualified for LTD benefits under the Plan's definition of Total Disability, and that Hartford had erred in upholding its decision to terminate her benefits.  DiGregorio also alleged that Hartford had not "afford[ed] [her] a reasonable opportunity . . . for a full and fair review" of her claim, as required by ERISA § 503(2), 29 U.S.C. § 1133(2), and its implementing regulations, because Hartford had failed to provide her with a copy of her entire claim file upon request.  DiGregorio sought relief in the form of a declaratory judgment of entitlement to LTD benefits under the Plan; retroactive and prospective reinstatement of benefits; attorney's fees and costs; and "such further, necessary, or proper relief as [the court] deems just and equitable in the circumstances."

Having obtained a copy of her entire claim file during litigation, DiGregorio moved for judgment on the administrative record on June 11, 2004.  DiGregorio did not seek to introduce any evidence outside of the administrative record for consideration by the district court.  As an alternate prayer for relief, however, DiGregorio sought a remand of her benefits claim to Hartford for an opportunity to supplement the administrative record.  Hartford and

the Plan cross-moved for summary judgment on June 21, 2004.[2] During a hearing on August 4, 2004, the parties agreed to the court's suggestion that it treat their cross-motions for summary judgment as "a case stated or trial on the record itself," thereby permitting the court to make findings of fact instead of granting inferences to each non-movant in turn.

The district court awarded judgment to Hartford and the Plan on DiGregorio's claim of entitlement to benefits on August 9, 2004. In a written Memorandum and Order, the court reviewed de novo Hartford's decision to uphold its termination of DiGregorio's benefits. DiGregorio, 2004 U.S. Dist LEXIS 15485, at *41. It held that "given DiGregorio's underlying failure to adduce any affirmative evidence supporting her contention that she was disabled as to any occupation, the opinions of Dr. Howard and Dr. Jupiter are fatal to [her] claim. Accordingly, I conclude that Hartford[] correctly determined that DiGregorio was not entitled to continued LTD benefits." Id. at *60-61. The court did not reach the question of whether DiGregorio was otherwise unentitled to benefits because she did not meet "the Plan's requirement that she be under the 'regular care' of a physician." Id. at *61 n.25.

In a brief discussion at the end of its lengthy opinion, the court separately addressed DiGregorio's argument that Hartford

---

[2]Neither Hartford nor the Plan sought a remand on the ground that DiGregorio had failed to exhaust her administrative remedies.

and the Plan had deprived her of a reasonable opportunity for a full and fair review of her claim in violation of ERISA § 503(2) by failing to provide her with a copy of her entire claim file upon request. "Even assuming that DiGregorio is correct that she was entitled to her complete file under [ERISA] § 503," the court stated, "she must additionally demonstrate that she was somehow prejudiced by Hartford's failure to provide the file," which DiGregorio had obtained during the litigation. Id. at *62. The court noted that DiGregorio "contends that" if she had received a copy of her entire claim file, "she would have provided evidence that she was under the regular care of a physician, evidence that she suffered from pain and other psychological deficits associated with her condition, and some further vocational expertise as to available jobs." Id. at *63, n.27. The court concluded, however, that DiGregorio's argument that "she would have supplemented [the administrative record] with further evidence to support her claim" if she had been able to review her entire claim file was

> post hoc rationalization. If DiGregorio had additional information that could have altered Hartford's decision, there was no reason she could not have submitted it along with the evidence she submitted during the appeals process. . . . I note she has not alluded to any evidence that she had or has additional information that would have changed Hartford's decision to deny her claim. Thus, I conclude that she was not denied a full and fair review of her claim.

Id. at *63 (citation omitted).

DiGregorio timely appealed.

## II.

**A.        Scope and Standard of Review**

DiGregorio raises a narrow issue on appeal.  She does not challenge the factual findings and legal conclusions set forth in the district court's nearly fifty-page opinion relating to the merits of her claim of entitlement to benefits based on the existing administrative record, reached upon de novo review of Hartford's final decision.  Nor does DiGregorio seek review of any decision by the court relating to the admission of extra-record evidence, having made no attempt to introduce any such evidence before the district court.  DiGregorio argues only that the court, instead of granting judgment in favor of Hartford and the Plan, should have remanded her claim to Hartford for supplementation of the record because Hartford failed to provide her with a copy of her entire claim file during its internal review process.

The scope of our review therefore is limited to the questions of whether the district court properly conditioned remand on a showing of prejudice and, if so, whether the district court correctly determined that DiGregorio had not made the requisite showing.  Whether a remand based on Hartford's failure to disclose the complete claim file upon request requires a showing of prejudice is a legal question that we review de novo.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997).  The

-14-

court's determination that DiGregorio did not show prejudice, by contrast, is a factual conclusion that we review only for clear error. Id.

**B.        DiGregorio's Entitlement to Review "Pertinent Documents"**

"ERISA sets certain minimum requirements for procedures" that a plan must implement for use "when a plan administrator denies a claim for benefits." Halpin v. W.W. Grainger, Inc., 962 F.2d 685, 688 (7th Cir. 1992). Pursuant to ERISA § 503, 29 U.S.C. § 1133,

> [i]n accordance with regulations of the Secretary [of Labor], every employee benefit plan shall--
>     (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>     (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

These baseline procedural protections "insure that when a claimant appeals a denial to the plan administrator, [she] will be able to address the determinative issues and have a fair chance to present [her] case." Halpin, 962 F.2d at 689. At the same time, they permit the resolution of many claims disputes without "having to resort to the expense and delay of the courts." Weaver v. Phoenix Home Life Mut. Ins. Co., 990 F.2d 154, 157 (4th Cir. 1993).

-15-

In order to implement the "full and fair review" requirement of ERISA § 503(2),[3] the Secretary of Labor adopted regulations in 1977 requiring "[e]very plan [to] establish and maintain a procedure by which a claimant . . . may (ii) Review pertinent documents" upon a plan administrator's denial of a claim for benefits. 29 C.F.R. § 2560.503-1(g)(1) (1977) (amended 2000). In the Preamble to the regulation, the Department of Labor expressed its view that "[a]s part of the review the participant must be allowed to see all plan documents and other papers which affect the claim," and that "plan procedures for review of claim denials must include the right of a claimant to . . . review pertinent documents relating to the denial." 42 Fed. Reg. 27426, 27426-27 (May 27, 1977).[4]

_____

[3]On appeal, DiGregorio does not challenge the defendants' compliance with the notice requirements of ERISA § 503(1), 29 U.S.C. § 1133(1), and its implementing regulations.

[4]In 2000, the Department of Labor amended 29 C.F.R. § 2560.503-1 to require that a plan's claim denial and review procedures must, among other things, "[p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information _relevant_ to the claimant's claim for benefits," 29 C.F.R. § 2560.503-1(h)(2)(iii) (2000) (emphasis added). Among the materials defined as "relevant" by 29 C.F.R. § 2560.503-1(m)(8) (2000) are those "relied upon in making the benefit determination," as well as those "submitted, considered, or generated in the course of making the benefit determination, _without regard to whether [they were] relied upon_ in making the benefit determination." (Emphasis added).
    The parties agree that DiGregorio's claim is not governed by the regulation as amended in 2000 but by the original version adopted in 1977. DiGregorio filed her claim for benefits under the Plan before the amended regulation took effect on January 1, 2002.

-16-

"The opportunity to review . . . pertinent documents is critical to a full and fair review, for by that mechanism the claimant has access to the evidence upon which the decision-maker relied in denying the claim and thus the opportunity to challenge its accuracy and reliability."  Ellis v. Metropolitan Life Ins. Co., 126 F.3d 228, 237 (4th Cir. 1997).  As one court has elaborated, because judicial review of claim denials is ordinarily limited to the administrative record,

> [t]he Plan's internal review process may be the claimant's last genuine opportunity to influence the final decision, to supplement the record in preparation for judicial review, or to correct any errors in the existing record.  Meaningful participation in this internal review process therefore requires that the claimant have an opportunity to

See 29 C.F.R. § 2560.503-1(o).  DiGregorio argues, however, that the pre-amendment regulation requires plans to provide the same materials as those specified in the amended regulation because the Department of Labor has consistently interpreted the 1977 version of the regulation as contemplating that "claimants must be provided access to all of the information present in the claims record, whether or not that information was relied upon by the plan in denying the claim and whether or not that information was favorable to the claimant."  65 Fed. Reg. at 7024b, 70252 (Nov. 21, 2000). DiGregorio also points out that Hartford acknowledged in its denial letter of April 18, 2001 that it had "considered [her] claim file as a whole" in deciding to terminate DiGregorio's LTD benefits.

Because we assume, without deciding, that Hartford was obligated to provide DiGregorio with her entire claim file, we need not determine the effect of the 2000 amendment on the Plan's obligations under ERISA § 503 and Hartford's duties as Plan administrator. Nor do we need to address Hartford's arguments that (1) a plan administrator commits no procedural violation so long as it substantially complies with the procedural requirements imposed on ERISA plans by regulation and (2) its provision of two documents from DiGregorio's claim file, the Employability Analysis Report and Dr. Howard's Evaluation, constitutes substantial compliance.

-17-

> review the relevant documents in the claim
> file so the claimant may submit any additional
> documents, correct any errors in the record,
> point to any favorable evidence that would
> tend to support the claim, fully understand
> the reasons for the decision that is being
> appealed, and to otherwise prepare an informed
> response to that decision.

Palmer v. Univ. Med. Group, 994 F. Supp. 1221, 1240 (D. Or. 1998).

DiGregorio maintains that Hartford's failure to disclose her complete claim file upon request deprived her of an opportunity for full and fair review as required by ERISA § 503(2). Following the district court's approach, we will assume for the purposes of our decision that DiGregorio was entitled to see her entire claim file. See DiGregorio, 2004 U.S. Dist LEXIS 15485, at *62.

**C.      Prejudice**

Although the district court assumed that "DiGregorio . . . was entitled to her complete file under [ERISA] § 503," it ultimately concluded that she "was not denied a full and fair review of her claim" because she failed to "demonstrate that she was somehow prejudiced by Hartford's failure to provide the file." DiGregorio, 2004 U.S. Dist LEXIS 15485, at *62 (footnote and citation omitted). On appeal, DiGregorio disputes the conclusion that a showing of prejudice is required to demonstrate a violation of ERISA's "full and fair review" requirement. She also argues that, in any event, she was prejudiced by Hartford's failure to disclose the complete claim file upon request.

-18-

### 1.     Propriety of Prejudice Requirement

In <u>Terry</u> v. <u>Bayer Corp</u>., 145 F.3d 28, 39 (1st Cir. 1998), the case relied upon by the district court for its prejudice requirement, we upheld a district court's denial of a plaintiff's claim of entitlement to benefits in part because the claimant failed to "present[] any evidence that implies that a different outcome would have resulted" if the plan administrator's notice of denial of his claim had "been in formal compliance with the regulations" requiring plans to specify the procedures perfecting a claim and for obtaining review of an adverse decision.

<u>Terry</u>, in turn, relied on our earlier decision in <u>Recupero</u> v. <u>New Eng. Tel. & Tel. Co.</u>, 118 F.3d 820, 825 (1st Cir. 1997), in which we affirmed the district court's denial of a plaintiff's similar claim of entitlement to benefits despite the court's conclusion that the defendant's "denial letters . . . were insufficient as a matter of law" given ERISA's statutory and regulatory requirements for the provision by plan administrators of notice of the procedures for obtaining review of the denial of a claim.  In <u>Recupero</u>, we held that the district court properly denied the plaintiff relief "for [defendant's] failure to conform" to the procedural requirements of ERISA § 503 where "[t]he district court determined that Recupero had not proffered evidence sufficient to support a finding of prejudice in any relevant sense."  <u>Id.</u> at 840; <u>cf.</u> <u>Orndorf</u> v. <u>Paul Revere Life Ins. Co.</u>, 404

-19-

F.3d 510, 520 (1st Cir. 2005) (noting that it may be appropriate for the court to consider "evidence outside the administrative record" in assessing a claim of "prejudicial procedural irregularity in the ERISA administrative review procedure" (emphasis added)).

DiGregorio attempts to distinguish her case from these precedents solely on the ground that the procedural irregularity in Terry and Recupero involved a plan administrator's failure to provide the requisite notice of the steps required to perfect a claim for benefits or seek review of the denial of a claim, while her case involves Hartford's more egregious failure to provide documents for DiGregorio's review in preparation of her appeal letter.

We find the distinction unpersuasive in this case. Nothing in either Terry or Recupero explicitly limits the prejudice requirement to claims of defective notice under ERISA § 503(1), as opposed to claims of failure to disclose a complete claim file under § 503(2). Nor does the fact that the appellants in Terry and Recupero sought a grant of benefits on appeal, rather than the more limited request for a remand to supplement the administrative record, create a meaningful distinction between the cases for purposes of the prejudice requirement. DiGregorio is essentially seeking a second chance, based on Hartford's failure to disclose her complete claim file the first time around, to show that she is

entitled to benefits. Under these circumstances, as a basis for a remand, the district court correctly required DiGregorio to demonstrate a connection between Hartford's failure to disclose the complete file and her inability to receive from the plan administrator a full and fair review of her claim to benefits.

## 2.    Application of Prejudice Requirement

To be entitled to a remand, DiGregorio must "show prejudice in a relevant sense." Recupero, 118 F.3d at 840. In other words, she must show that as a result of Hartford's failure to disclose her complete claim file, she did not understand the evidence that she had to provide to dispute Hartford's conclusion that she was not entitled to benefits.

DiGregorio contends that if she had been able to review her entire claim file while she was preparing her appeal letter, she "would have provided evidence that she was under the regular care of a physician, evidence that she suffered from pain and other psychological deficits associated with her condition, and some further vocational expertise as to available jobs." Id. at *63 n.27. The court dismissed this contention as "post hoc rationalization," noting that "[i]f DiGregorio had additional information that could have altered Hartford's decision, there was

no reason she could not have submitted it along with the evidence she submitted during the appeals process." Id.[5]

Under the terms of the Plan, DiGregorio had to show that her bilateral carpal tunnel syndrome rendered her unable to hold "any occupation . . . for which [she was], or may be, qualified by education, training or expertise." The documents Hartford did provide to DiGregorio in response to her initial request for documents clearly revealed Hartford's belief that DiGregorio could perform other occupations for which she was or could be qualified despite her bilateral carpal tunnel syndrome. In her appeal letter, DiGregorio challenged the assumptions upon which Hartford's Employability Analysis Report was based, as well as the accuracy of Dr. Howard's recommendation. DiGregorio also submitted the opinion of a different physician, Dr. Jupiter. Yet Dr. Jupiter's opinion merely confirmed that DiGregorio could not perform her own occupation as a secretary, and that DiGregorio "feels that she is unable to perform bimanual tasks in any form of work." DiGregorio does not challenge the district court's determination that the

_____

[5]In her motion for judgment on the administrative record, DiGregorio argued that she suffered prejudice from Hartford's failure to notify her in its denial letter that it did not consider her to be under the regular care of a physician. She argued that if she had been aware of this alternate ground for Hartford's denial of her claim, she would have submitted proof that she was under the regular care of a physician with her appeal letter to Hartford. The court upheld Hartford's decision to uphold its denial of DiGregorio's claim on the alternate ground that she did not meet the Plan's definition of Total Disability.

medical reports of both Dr. Howard and Dr. Jupiter, DiGregorio's own physicians, were "fatal to [her] claim." Id. at *60-61.

In short, DiGregorio has not shown "prejudice in a relevant sense." Recupero, 118 F.3d at 840. She has not demonstrated that Hartford's failure to disclose her complete file upon request prevented her from submitting evidence necessary to dispute the denial of her claim for benefits. Nor has DiGregorio shown that the refusal to disclose the complete claim file had any impact on her "[m]eaningful participation in [the] internal review process" or otherwise impaired her ability to "prepare an informed response to [Hartford's] decision." Palmer, 994 F. Supp. at 1240. The district court's conclusion that DiGregorio did not make the requisite prejudice showing therefore was not clearly erroneous. Absent such a showing, the district court properly denied DiGregorio's request for a remand to Hartford of her benefits claim for supplementation of the record. Therefore, the district court's judgment is **affirmed**.

**So ordered.**

-23-