FILED
United States Court of Appeals
Tenth Circuit

February 10, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

KIMBERLY BRIMER; MATTHEW
BRIMER; CHRISTOPHER BRIMER,

    Plaintiffs - Appellants,

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA,

    Defendant - Appellee.

No. 11-5032
(D.C. No. 4:07-CV-00453-GKF-PJC)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES, EBEL**, and **MATHESON**, Circuit Judges.

Kimberly Brimer and her sons, Matthew and Christopher Brimer, claim that they

are entitled to benefits under a group accident policy insuring their husband and father,

James Brimer.  The district court concluded that Life Insurance Company of North

America ("LINA") properly denied the Brimers' claim.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

_____

    *This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

# I. BACKGROUND

## A. *Mr. Brimer's Death*[1]

On March 26, 2006, Kimberly and Matthew Brimer returned home after a weekend trip and found James Brimer lying on the kitchen floor. He was unresponsive. Ms. Brimer called 911. When medical personnel arrived, they pronounced her husband dead.

A police officer at the scene observed dried "foam cap" on Mr. Brimer's chin area and on his shirt. The officer also found a bottle of Soma (a muscle relaxant also known as carisoprodol) on the kitchen table. Thirty-three of the 100 capsules were missing from the bottle, which had been filled just two days earlier on March 24.[2]

Mr. Brimer's physician, Dr. Christopher Klotz, reported to police that he had prescribed pain medication to Mr. Brimer. According to Dr. Klotz, Ms. Brimer usually administered the medication to her husband, but because she had been out of town, Mr. Brimer may have administered the medication himself and exceeded the recommended

---

[1]The facts recounted here about Mr. Brimer's death and in subsection B about LINA's administrative review come from the district court's opinions. *See Brimer v. Life Ins. Co. of N. Am.*, No. 07-CV-453-GKF-PJC, 2010 WL 3607632, at *4 (N.D. Okla. Sept. 13, 2010) (*Brimer I*); *Brimer v. Life Ins. Co. of N. Am.*, No. 07-CV-453-GKF-PJC, 2011 WL 650329, at *1 (N.D. Okla. Feb. 11, 2011) (*Brimer II*).

[2]The district court found that, per Mr. Brimer's prescription, a maximum of 24 pills were to be taken over the three-day period between the filling of the Soma prescription and Mr. Brimer's death. *See Brimer II*, 2011 WL 650329, at *2 n.2.

amount.

An autopsy was performed the next day. According to the medical examiner's report, Mr. Brimer's femoral blood tested positive for hydrocodone, codeine, carisoprodol, and meprobamate. His heart blood tested positive for diazepam, nordiazepam, and acetaminophen.

The medical examiner noted that Mr. Brimer had a history of hypertension and back pain. The report concluded that the cause of death was "acute combined drug toxicity." *Brimer I*, 2010 WL 3607632, at *2. Mr. Brimer's death certificate listed the same immediate cause of death—acute combined drug toxicity due to the ingestion of codeine, diazepam, carisoprodol, and hydrocodone. The medical examiner's report concluded that the manner of death was "accident." *Id.*

### B. *Administrative Proceedings*

As an American Airlines employee, Mr. Brimer was insured under a group accident policy (the "Policy") issued by LINA. Under the Policy, LINA

> agree[d] to pay benefits for loss from bodily injuries:
>> a. caused by an accident which happens while an insured is covered by this policy; and
>> b. which, directly and from no other causes, result in a covered loss.

Aplt. Appx. at 1. LINA would not pay benefits if the loss fell within one of the Policy's seven enumerated exclusions. In relevant part, the Policy's exclusions provide the following:

> No benefits will be paid for loss resulting from:
>> 1. [I]ntentionally self-inflicted injuries, or any attempt thereat.

. . .
6. Benefits will not be paid for loss covered by or resulting from sickness, disease, bodily infirmity or medical or surgical treatment thereof . . . .
7. Voluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of, a licensed physician. (Accidental ingestion of a poisonous substance [is] not excluded.)

*Id.*

Ms. Brimer and her sons, Matthew and Christopher, are beneficiaries under the Policy and submitted a claim for benefits on or about November 14, 2006. LINA began collecting information relevant to the Brimers' claim, including a toxicological opinion. The toxicologist opined "within a reasonable degree of scientific certainty" that "Mr. Brimer had not taken carisoprodol according to his prescribed dosage" and that the "concentrations of codeine, carisoprodol, and meprobamate found in Mr. Brimer's post-mortem blood are greater than what would be expected with therapeutic doses." *Brimer II*, 2011 WL 650329, at *2. LINA denied the Brimers' claim under Exclusion 7 of the Policy.

The Brimers began an administrative appeal of LINA's decision. They argued that Exclusion 7 applies to the voluntary self-administration of non-prescription drugs and that "Mr. Brimer ingested medication for which he had a valid prescription." Aplt. Appx. at 6. On June 15, 2007, LINA informed the Brimers that it needed more time to evaluate the appeal and to determine whether the loss was covered under the Policy. It requested that the Brimers submit additional information, including "any information

-4-

which [they felt supported] the fact that . . . Mr. Brimer's death was not the result of medical or surgical treatment or the result of a sickness, disease or bodily infirmity." *Id.* at 5. The Brimers did not submit additional information. LINA requested this information again on July 11, 2007.

On July 12, 2007, a day after its second request for further information, LINA affirmed its adverse benefit determination. It based its decision on four grounds: (1) Mr. Brimer's death was not accidental, (2) Exclusion 1 applies, (3) Exclusion 6 applies, and (4) Exclusion 7 applies. LINA informed the Brimers that they had exhausted all administrative appeal levels.

On July 23, 2007, the Brimers brought an action in state court alleging breach of contract and breach of the covenant of good faith and fair dealing. LINA removed the action to federal district court based on diversity jurisdiction and because the Brimers' claim involved a plan governed by the Employee Retirement Income Security Act ("ERISA") and thus presented a federal question.

## C. *District Court Proceedings*

In the district court, the Brimers sought judicial review of LINA's decision to deny benefits under the Policy. The district court issued two opinions, an initial and a revised opinion, affirming LINA's denial of benefits.

In the initial opinion, *Brimer I*, the court rejected the Brimers' argument that because LINA based the initial denial of their claim solely on Exclusion 7, "'fundamental fairness' require[d] LINA be held . . . to Exclusion 7." 2010 WL 3607632, at *4. The

-5-

court concluded that the Brimers "had ample opportunity to supplement the Administrative Record prior to administrative appeal and to address the new grounds for exclusion in their briefs for this case." *Id.* It also noted that "the remedy for LINA's untimely notice of the additional grounds for denial is to allow plaintiff to bring this suit and file additional evidence pertaining to the new grounds of denial. Plaintiffs have had that opportunity, and thus no further remedy is necessary." *Id.*

The district court affirmed LINA's denial of benefits. It concluded that the Brimers had failed to carry their burden to prove that Mr. Brimer's death was an accident. *Id.* at \*6. Moreover, even assuming that the death had been accidental, the court ruled that Exclusion 6 barred the Brimers' claim. In considering Exclusion 6, the court noted that "LINA's cited authority is *uncontested* that an exclusion in an [insurance] policy for medical treatment of a sickness or disease unambiguously includes death caused by accidentally overdosing on a drug prescribed by a doctor for a medical condition." *Id.* (emphasis added) (quotations omitted). Having affirmed LINA's denial of benefits on these grounds, the court did not reach the application of Exclusions 1 and 7. *Id.* at \*5.

The Brimers then filed a "Motion for New Trial" under Rule 59 of the Federal Rules of Civil Procedure, seeking to reverse the court's judgment.[3] In response to the Brimers' motion, the district court issued a revised opinion and order, *Brimer II*. However, "because the revisions [did] not merit a substantive alteration of the

---

[3]Although the Brimers styled their motion as a "Motion for New Trial," no trial occurred below. LINA does not challenge the form of the Brimers' motion on appeal.

Judgment," the court denied the Brimers' motion. *Brimer II*, 2011 WL 650329, at *1.

In *Brimer II*, the district court "reverse[d] its previous decision" regarding the accidental nature of Mr. Brimer's death. *Id.* at *4. It concluded that "[t]he Brimers have carried their burden of proving that Mr. Brimer lost his life from bodily injuries caused by an accident." *Id.*

The court also addressed Exclusions 1 and 7. It ruled that Exclusion 1 was "not a legitimate basis for LINA to deny the Brimers' claim," *id.* at *5, and that Exclusion 7 was ambiguous, *id.* at *8. Because of Exclusion 7's ambiguity, the court construed this exclusion against LINA and adopted the reading of a "reasonable policyholder" that Exclusion 7 applies to "loss relating only to non-prescribed drugs or chemical substances." *Id.* Because Mr. Brimer had overdosed on prescription medication, LINA did not "meet its burden of showing that the loss falls within Exclusion 7." *Id.*

The court reaffirmed LINA's denial of the Brimers' claim under Exclusion 6. Although the Brimers objected that LINA did not raise Exclusion 6 as a basis of denial until the administrative appeal, the court was unpersuaded that it should "reopen the case to permit the Brimers to present additional evidence." *Id.* at *7. It agreed with the Brimers that they had not been given a "reasonable basis to know that they were under an obligation [during the administrative appeal] to address additional grounds for the adverse benefit decision." *Id.* at *6. Nonetheless, this procedural shortcoming at the administrative level entitled them "to present additional evidence in the district court and to have the district court consider it." *Id.* The Brimers did not seek leave to present

-7-

additional evidence.  *Id.*

Regarding Exclusion 6, the district court again noted that "[c]ourts have consistently held that a medical treatment exclusion applies to accidental death caused by overdose of drugs prescribed by a doctor in the course of medical treatment."  *Id.* at *5. Even though the overdose in this case was due to Mr. Brimer's actions, not his physician's, the court ruled that "the medical treatment exclusion still applies."  *Id.*

Finally, the district court rejected the Brimers' argument "that Exclusion 6 should be read out of the policy because it conflicts with Exclusion 7."  *Id.* at *7.  The Brimers raised this argument for the first time in their reply brief on their Motion for New Trial. Due to the untimely nature of this argument, the court did not address it.  *Id.*

The Brimers filed a timely notice of appeal challenging the district court's judgment.

## II.   DISCUSSION

On appeal, the Brimers challenge LINA's denial of their claim under Exclusion 6. First, they argue that LINA's assertion of Exclusion 6 at the administrative appeal stage was procedurally improper under ERISA and "deprived [them] of the opportunity to challenge Exclusion 6 in both the administrative appeals process and on review by the trial court."  Aplt. Reply Br. at 8.

Second, the Brimers argue that the district court erred when it declined to consider their argument that Exclusions 6 and 7 conflict when read together, which renders Exclusion 6 ambiguous.  They urge this court to address the alleged conflict between the

exclusions.

Unless the ERISA-governed plan provides to the contrary, we review a denial of benefits under a de novo standard. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Allison v. UNUM Life Ins. Co. of Am.*, 381 F.3d 1015, 1021 (10th Cir. 2004). LINA concedes that a de novo standard of review is appropriate. In addition, we review the district court's legal conclusions de novo. *See Graham v. Hartford Life & Accident Ins. Co.*, 589 F.3d 1345, 1353 (10th Cir. 2009).

With these standards in mind, we affirm the district court's judgment in favor of LINA. Although the Brimers argue that they should have been given the opportunity to present evidence regarding Exclusion 6 at the administrative appeal level and in the district court, the Brimers concede in their appellate briefs that the only evidence relevant to Exclusion 6 is the Policy itself. *See* Aplt. Br. at 28-29. Because the Policy was before the district court, the Brimers have failed to show prejudice from LINA's procedural violation of ERISA and the district court's consideration of Exclusion 6. *See DiGregorio v. Hartford Comprehensive Emp. Benefit Serv. Co.*, 423 F.3d 6, 16 (1st Cir. 2005) (requiring appellant to "show prejudice in a relevant sense" due to a procedural violation of ERISA (quotations omitted)).

As for the Brimers' theory that Exclusions 6 and 7 conflict, resulting in ambiguity, we conclude that the Brimers forfeited this argument. We also do not address this forfeited argument because the Brimers do not argue plain error on appeal. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1127-28 (10th Cir. 2011).

**A.** *Procedural Violation*

**1.** *Full and Fair Review Standard*

Every benefit plan governed by ERISA must contain a two-step procedure for denying claims. *See* 29 U.S.C. § 1133. First, the plan participant or beneficiary shall receive "adequate notice . . . setting forth the specific reasons for [a] denial." *Id.* § 1133(1); *see also* 29 C.F.R. § 2560.503-1(g)(1)(i)-(ii). Second, the plan must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2). This full and fair review must concern "the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1). Among other requirements, the full and fair review must give the claimant "the opportunity to submit written comments, documents, records, and other information relating to the claim for benefits." *Id.* § 2560.503-1(h)(2)(ii).

Under this framework, a claimant does not receive a full and fair review if the administrative appeal decision justifies the denial of benefits based on newly asserted grounds. Such grounds do not concern "the decision denying the claim," 29 U.S.C. § 1133(2), do not address "the adverse benefit determination" in the first instance, 29 C.F.R. § 2560.503-1(h)(1), and deny a claimant the opportunity to submit materials that rebut the original adverse determination and support a claim for benefits, *id.* § 2560.503-

-10-

1(h)(2)(ii). Denying a claim at the administrative appeal stage based on grounds not asserted in the initial claim denial is thus a violation of ERISA's procedural requirements. *See Robinson v. Aetna Life Ins. Co.*, 443 F.3d 389, 393-94 (5th Cir. 2006); *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 871-72 (9th Cir. 2008). Nonetheless, courts can require a showing of prejudice due to an ERISA violation as a prerequisite to ordering a remand. *See, e.g.*, *DiGregorio*, 423 F.3d at 16 ("Claimant must demonstrate how a plan's flawed procedure prejudiced review of her claim."); *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998) (concluding that remand to the administrator based on a § 1133 violation "was not required . . . because a remand would be futile").

### 2. *Application of the Standard*

We agree with the district court that "LINA . . . denied the Brimers their right under ERISA to an administrative appeal of the adverse benefit determination as premised on the medical treatment exclusion." *Brimer II*, 2011 WL 650329, at *6. LINA's administrative process was flawed. It relied on Exclusion 7 for the initial denial of coverage. Next, on administrative appeal, LINA relied on a finding of no accident and on Exclusions 1, 6, and 7 to affirm the denial of coverage without clearly providing the Brimers an opportunity to present evidence on the new grounds for denial—in particular, evidence on Exclusion 6.

LINA argues that it put the Brimers on notice that Exclusion 6 was at issue when it asked during its administrative appeal process for "any information which you feel

supports the fact that . . . Mr. Brimer's death was not the result of a medical or surgical treatment or the result of a sickness, disease or bodily infirmity." Aplt. Appx. at 5. Although this request parrots the language of Exclusion 6, it did not adequately remedy the procedural violation. The request makes no mention of Exclusion 6, and the Brimers could reasonably have believed that the information sought related to Exclusion 7, the sole basis for the original claim denial.

We therefore agree with the district court that LINA violated ERISA's requirement of a full and fair review when its administrative appeal decision added Exclusion 6 as a justification for denying the Brimers' claim. But, as discussed below, we conclude that the Brimers have not shown they were prejudiced by LINA's violation of ERISA and the district court's consideration of Exclusion 6.

### 3. *Remedy*

The Brimers complain that LINA's violation of ERISA "deprived [them] of the opportunity to challenge Exclusion 6 in both the administrative appeals process and on review by the trial court." Aplt. Reply Br. at 8. LINA argues that the Brimers cannot show that they suffered prejudice as a result of a procedural violation. Aplee. Br. at 41. We agree with LINA because the Brimers concede on appeal that the Policy is the only relevant evidence for determining whether Exclusion 6 bars coverage. Because the Policy was before the district court, the court properly considered LINA's denial of benefits under Exclusion 6.

The district court noted that the Brimers could have sought leave to introduce

evidence regarding Exclusion 6, but that the Brimers had failed to do so and "never apprised the court of their claimed right to present additional evidence." *Brimer II*, 2011 WL 650329, at *6. The court also stated, "perhaps most importantly, the Brimers do not suggest the existence of any relevant evidence outside the administrative record that may have a bearing on the issue of whether Exclusion 6 applies." *Id.* at *7. There was "nothing to suggest that the procedural irregularity in this case prevented full development of the administrative record." *Id.* at *7 n.6.

On appeal, the Brimers do not suggest that the district court lacked extrinsic evidence to review LINA's denial of their claim under Exclusion 6. They concede that "there is really no new evidence to be gleaned from the accidental death of Mr. Brimer," Aplt. Br. at 28, and "that the only evidence necessary is the policy itself," *id.* at 29. The Brimers' concession that the court need not consider any evidence extrinsic to the Policy resolves their claim of procedural error against them.

In light of the Brimers' failure in the district court to present evidence that Exclusion 6 does not apply, and especially their concession on appeal that the Policy is the only relevant evidence for determining whether Exclusion 6 bars their claim, we conclude that the Brimers have failed to show prejudice from LINA's violation of ERISA and the court's consideration of Exclusion 6. *See Recupero v. New England Tel. & Tel. Co.*, 118 F.3d 820, 840-41 (1st Cir. 1997) (affirming a district court's conclusion that no remedy was warranted for a violation of 29 U.S.C. § 1133 because the plan participant "had not proffered evidence sufficient to support a finding of prejudice in any relevant

-13-

sense").

The district court reviewed de novo LINA's denial under Exclusion 6 using the only relevant evidence, the Policy itself. Whether Exclusion 6 precludes the Brimers' claim as a matter of law is an issue that the district court was well suited to resolve. *See LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 806 n.12 (10th Cir. 2010). "[N]o purpose would be served by a further, but procedurally correct, review" of the Brimers' claim. *Sage v. Automation, Inc. Pension Plan & Trust*, 845 F.2d 885, 895 (10th Cir. 1988); *see also Recupero*, 118 F.3d at 840 (noting the futility of remand where the appellant "entirely failed . . . to make any proffer of relevant evidence" or factual dispute regarding a plan interpretation).

\* \* \*

We hold that LINA's administrative process was flawed and violated ERISA's requirement of a full and fair review. In spite of this procedural blunder, the district court correctly considered LINA's denial of benefits under Exclusion 6 because the Brimers concede that the only evidence needed to decide whether Exclusion 6 applies is the Policy itself.

## B. *Exclusions 6 and 7—Conflict and Ambiguity Issue*

The Brimers contend that the district court erred when it declined to consider their argument that Exclusion 6 is ambiguous when read in conjunction with Exclusion 7. LINA responds that the Brimers first raised this argument in their reply brief on their

-14-

Motion for New Trial and that this argument therefore was not preserved for our review. We agree that the Brimers forfeited this argument by not raising it in a timely fashion before the district court. The Brimers also did not carry their burden on appeal of showing that plain error occurred.

"It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976); *see also Richison*, 634 F.3d at 1127. "Consequently, when a litigant fails to raise an issue below in a timely fashion and the court below does not address the merits of the issue, the litigant has not preserved the issue for appellate review." *F.D.I.C. v. Noel*, 177 F.3d 911, 915 (10th Cir. 1999). We deem such arguments forfeited and "will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Richison*, 634 F.3d at 1128. Under this plain error standard, it is the burden of the party asserting error to "establish the presence of (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

The Brimers forfeited their argument that reading Exclusions 6 and 7 together renders Exclusion 6 ambiguous because the Brimers first raised it in their reply brief on their Motion for New Trial. *See Noel*, 177 F.3d at 915 (holding an issue was unpreserved when a party raised it in a reply brief on a post-trial motion). In addition, the Brimers have failed to "argue for plain error and its application on appeal," which "surely marks the end of the road for an argument for reversal." *Richison*, 634 F.3d at 1131. We

-15-

therefore do not reach this issue.[4]

Finally, we note that before their reply brief on the Motion for New Trial, the Brimers did not challenge LINA's interpretation of Exclusion 6 in the district court. LINA cited extensive authority supporting its argument that Exclusion 6 bars the Brimers' claim, and this authority was "uncontested." *Brimer I*, 2010 WL 3607632, at *6. Aside from their forfeited argument that Exclusion 6 is ambiguous in light of Exclusion 7, the Brimers also do not challenge the district court's interpretation of Exclusion 6 on appeal. *See* Aplt. Br. at 11 ("Reading Exclusion 6 in isolation would reasonably yield an interpretation excluding coverage for loss resulting from voluntary ingestion of medicine taken for the purpose of treating disease.").

We hold that the Brimers forfeited their argument that Exclusion 6 is ambiguous due to a conflict with Exclusion 7, did not argue plain error on appeal, and otherwise left unchallenged the district court's interpretation of Exclusion 6.

## CONCLUSION

Because the procedural defect in the administrative appeal did not prejudice the

---

[4]Although the Brimers have not carried their burden of addressing the elements of plain error on appeal, they do challenge the district court's interpretation of Exclusion 6 as erroneous in light of the alleged conflict with Exclusion 7. They do so based on the language of the exclusions, as well as authority from other jurisdictions. Assuming the Brimers are correct that error occurred, their argument would fail under the second element—that the error was plain—because the Brimers point to no U.S. Supreme Court or Tenth Circuit precedent showing the error is "clear under current law." *United States v. Cordery*, 656 F.3d 1103, 1106 (10th Cir. 2011) (quotations omitted). Nor can we say that "the district court's interpretation [of Exclusion 6] was clearly erroneous." *Id.* (quotations omitted).

Brimers or foreclose judicial review of Exclusion 6, because the Brimers forfeited their argument that Exclusion 6 conflicts with Exclusion 7 and failed to argue plain error, and, finally, because the Brimers have not otherwise challenged the district court's conclusion that Exclusion 6 precludes coverage, we affirm.

ENTERED FOR THE COURT


Scott M. Matheson, Jr.
Circuit Judge

11-5032, <u>Brimer v. Life Ins. Co. of Am.</u>

**EBEL**, Circuit Judge, dissenting

I agree with the majority's opinion as it relates to the procedural irregularity in LINA's handling of Brimers' claim, and that it was not error for the district court to reject Brimers' argument that she should be able to introduce additional evidence on the applicability of Exclusion 6. However, I cannot agree with the majority's conclusion that Brimers' "forfeiture" of the argument regarding the conflict between Exclusions 6 and 7 prevents this Court from addressing that conflict. I therefore respectfully dissent.

The district court relied solely on Exclusion 6 ("medical treatment") to uphold LINA's denial of Brimer's claim, and Brimers appeal that decision. The de novo standard of review in this ERISA case requires this Court to determine the correctness of that decision—i.e., the applicability of Exclusion 6—by examining the plan documents as a whole. A party's reference to, or failure to refer to, a specific provision of the policy before the district court does not alter this Court's obligation to examine the whole policy. Reading the policy as a whole, and the exclusions in conjunction with one another, I find a conflict between Exclusions 6 and 7 that renders Exclusion 6 ambiguous as to the question before us, i.e., whether James Brimer's death from an overdose of prescribed drugs, notwithstanding that it was accidental, resulted from "medical treatment." Resolving this ambiguity in favor of Brimer, as required by the doctrine of <u>contra proferentem</u>, I would hold that LINA may not rely upon Exclusion 6 to deny coverage, and I would reverse and remand with instructions to enter judgment in

Brimers' favor.

The policy does not define "medical treatment." The interpretation of the undefined terms of an ERISA plan is governed by federal common law. LaAsmar v. Phelps Dodge Corp. Accidental Death & Dismemberment & Dependent Life Ins. Plan, 605 F.3d 789, 817 (10th Cir. 2010) (citing Santaella v. Metro. Life Ins. Co., 123 F.3d 456, 461 (7th Cir. 1997)); see Miller v. Monumental Life Ins. Co., 502 F.3d 1245, 1249-50 (10th Cir. 2005). In interpreting an ERISA plan, this Court must "examine the plan documents as a whole, and, if unambiguous, construe them as a matter of law." Miller, 502 F.3d at 1250 (internal quotations omitted). Reading the documents as a whole includes reading all exclusions in conjunction. See King v. Hartford Life and Acc. Ins. Co., 414 F.3d 994, 1004 (8th Cir. 2005) ("But even if [the insurer's] reading of [one exclusion] might be a reasonable interpretation of the language standing alone, . . . it is not reasonable in the context of this policy, because it renders meaningless other important policy language[, including the next exclusion listed].") (internal citation omitted); Clark v. Metropolitan Life Ins. Co., 369 F. Supp. 2d 770, 778 (E.D. Va. 2005) (reading exclusions "in conjunction"). If, employing a de novo standard of review, we find a plan term ambiguous, the doctrine of contra proferentem—construing all ambiguities against the drafter—requires the ambiguity to be resolved in favor of coverage. See LaAsmar, 605 F.3d at 805; Rasenack ex rel. Tribolet v. AIG Life Ins. Co., 585 F.3d 1311, 1318 (10th Cir. 2009); Miller, 502 F.3d at 1249.

Whether a plan term or provision is ambiguous depends on the "circumstances

presented" and the "question at issue in a given situation." LaAsmar, 605 F.3d at 803-04 (citing Rasenack, 585 F.3d at 1318); id. at 804 n.10. A plan provision is ambiguous if it "is reasonably susceptible to more than one meaning, or where there is uncertainty as to the meaning of the term." Id. at 804 (quoting Rasenack, 585 F.3d at 1318). The inquiry is not into what the insurer, as drafter, "unilaterally intended the terms of the Plan to mean, but what a reasonable person in the position of the [insured] would have understood those terms to mean." Id. at 801 (citing Rasenack, 585 F.3d at 1318).

I disagree with the district court's conclusion that an overdose of prescription drugs "unambiguously" falls within the scope of the medical treatment exclusion. Rather, I find the plain language of the exclusion is ambiguous in this context. In light of the "question at issue in [this] situation," id. at 803-04—i.e., whether "medical treatment" includes an accidentally self-administered overdose of prescribed medication—the term "medical treatment" is "reasonably susceptible to more than one meaning," see id. at 804. Because at least one of those possible meanings would result in coverage, the doctrine of contra proferentem requires that it be construed against LINA as the drafter. See id. at 805.

Even if Exclusion 6 were not facially ambiguous, it would most certainly become ambiguous when read in conjunction with Exclusion 7, which excludes losses resulting from "[v]oluntary self-administration of any drug or chemical substance not prescribed by, and taken according to the directions of, a licensed physician." The district court correctly found this provision ambiguous. Consider just the interpretation urged by

-3-

LINA before the district court, i.e., that the policy should be meant to cover losses related to voluntary, self-administered drug ingestion only if the drug was both prescribed by, and taken according to the instructions of, a licensed physician. This is impossible to square with the district court's reading of Exclusion 6, which would hold any action by the patient with respect to a prescribed drug as part of "medical treatment." If the policy is meant to cover losses that result from self-administering prescribed medication in accordance with a doctor's instructions, then that means that self-administering prescribed medication in accordance with the doctor's instructions is not "medical treatment" of a "sickness, disease, or bodily infirmity" within the meaning of Exclusion 6. And if self-administration of prescribed medication in accordance with the doctor's instructions is not "medical treatment" within the meaning of Exclusion 6, it is difficult to see how self-administration of a prescribed medication contrary to a doctor's instructions could be "medical treatment." Conversely, if "medical treatment" encompasses the taking of any drug on the advice of a doctor, then there cannot be any exception to the drug exclusion, regardless of whether the prescribed drug is taken "according to the instructions of" a doctor, contrary to the language of Exclusion 7. All of this places Exclusions 6 and 7 at odds with one another, a conflict that must, in light of our de novo review, be resolved in favor of coverage. See id. at 805; Rasenack, 585 F.3d at 1318; Miller, 502 F.3d at 1249; cf. Scruggs v. Exxon Mobil Pension Plan, 585 F.3d 1356, 1366 (10th Cir. 2009) (rule of contra proferentem inapplicable under arbitrary and capricious standard).

-4-

Although the majority denies the Brimers relief in this case on a procedural ground, the next similarly situated beneficiary will avoid this fate by arguing the conflict between Exclusions 6 and 7 from the outset. Insurers would do well to make clear in their policies precisely what they intend to cover and what they intend to exclude. According to the Centers for Disease Control, deaths resulting from accidental prescription drug overdoses are epidemic,[1] and even a cursory review of the case law shows that such deaths have spurred extensive litigation between beneficiaries and insurers. It would not be unreasonable for an insurer to decide that it does not wish to insure against the risk of such deaths. And nothing prevents an insurer that makes that decision from simply, and explicitly, writing a policy that excludes deaths resulting from accidental drug overdoses. But an insurer should not benefit from poor drafting and ambiguities in its own policy to avoid paying benefits where they are due. Here, LINA drafted a policy that is ambiguous on the question of whether a self-administered accidental overdose of prescription medications is within the exclusion for "medical treatment." That ambiguity should have been resolved in the Brimers' favor.

I respectfully dissent.

---

[1] Centers for Disease Control, <u>Policy Impactf: Prescription Painkiller Overdoses</u>, http://www.cdc.gov/homeandrecreationalsafety/rxbrief/ (last updated Dec. 19, 2011) (noting that drug overdose death rates have more than tripled since 1990, and that sales of prescription painkillers have increased more than 300% since 1999).